(880 P.2d 281)

No. 70,463

CAPITOL FEDERAL SAVINGS AND LOAN ASSOCIATION, *Appellant*, v.
PAUL M. HOGER, MARGARET E. HOGER, and ASSOCIATES
FINANCIAL SERVICES COMPANY OF KANSAS, INC., *Defendants*, and
KPL GAS SERVICE (now WESTERN RESOURCES, INC.), *Appellee*.
Petition for review denied 256 Kan. _____ (November 8, 1994).

Opinon filed September 2, 1994.

*John Anderson, Jr.,* of Overland Park, for the appellant.

*Jefffrey S. Southard,* of Topeka, and *Carolyn R. Wade,* of Kansas City, Missouri, for the appellee.

*Gerald L. Goodell* and *Curtis J. Waugh,* of Goodell, Stratton, Edmonds & Palmer, of Topeka, for *amicus curiae* Kansas-Nebraska League of Savings Institutions.

Before BRISCOE, C.J., RULON and LEWIS, JJ.

BRISCOE, C.J.: In this foreclosure action, Capitol Federal Savings and Loan Association appeals from the district court's order granting Western Resources, Inc.'s purchase money security interest in fixtures priority over Capitol Federal's previously recorded real estate mortgage. Capitol Federal contends Western Resources' remedy was limited to repossession of the fixtures.

Capitol Federal held a real estate mortgage on the home of Paul and Margaret Hoger. The mortgage was recorded in Johnson County on August 15, 1984. In 1990, the Hogers purchased a

furnace and air conditioner from The Kansas Power and Light Company (KPL), d/b/a KPL Gas Service (now Western Resources, Inc.), to be installed in the Hogers' home. On March 2, 1990, the Hogers and KPL entered into an installment contract and the Hogers executed a promissory note to finance the purchase of the furnace and air conditioner. The furnace and air conditioner were installed on March 20. KPL filed financing statements covering the furnace and air conditioner in Johnson County on March 23, 1990. Capitol Federal did not receive notice of either the purchase or the installation of the furnace and air conditioner and did not consent to the security agreement. The parties do not dispute that KPL has a purchase money security interest in the fixtures.

The Hogers defaulted on both the Capitol Federal and the Western Resources loans. Capitol Federal filed a mortgage foreclosure action on December 28, 1992, and named both the Hogers and Western Resources as defendants. A second mortgage holder, Associates Financial Services Company of Kansas, Inc., was also named as a defendant, but did not file an answer. Western Resources answered and counterclaimed for the $2,887.50 amount the Hogers still owed on their installment contract, claiming a first and prior right to the real estate mortgage foreclosure sale proceeds under K.S.A. 1993 Supp. 84-9-312(4) and K.S.A. 84-9-313(4), but did not seek a default judgment against the Hogers when they failed to answer. By this point, the Hogers had filed a petition in bankruptcy and Western Resources opted not to pursue a personal judgment against the Hogers.

Capitol Federal filed a motion for summary judgment, claiming priority in the real estate mortgage foreclosure sale proceeds over Western Resources' purchase money security interest. The court denied the motion, finding the Western Resources fixture filing was perfected under 84-9-313(4)(a) and Western Resources' purchase money security interest in the furnace and air conditioner was superior to Capitol Federal's real estate encumbrance. The court ordered Capitol Federal to pay Western Resources the amount of its claim from the foreclosure sale proceeds. The effect of this ruling was to permit Western Resources first priority in the foreclosure sale proceeds for the amount it claimed.

The parties agreed to sever the priority issue from the balance of the action. The mortgage foreclosure action has proceeded, the foreclosure sale has been held, and monies in the amount of Western Resources' claim are being retained by the clerk of the district court pending resolution of this appeal.

## I. IN WHAT DID WESTERN RESOURCES HAVE A PRIORITY INTEREST?

It appears the parties do not dispute that the furnace and air conditioner purchased by the Hogers have become fixtures and that Western Resources obtained a priority interest of some type in those fixtures. A review of the law as it applies to "perfecting" a fixture filing is a helpful first step in determining the scope of Western Resources' interest.

"[G]oods are 'fixtures' when affixing them to real estate so associates them with the real estate that, in the absence of any agreement or understanding with his vendor as to the goods, a purchaser of the real estate with knowledge of interests of others of record, or in possession, would reasonably consider the goods to have been purchased as part of the real estate." K.S.A. 84-9-313(1)(a).

"[A] 'fixture filing' is the filing in the office where a mortgage on the real estate would be filed or recorded of a financing statement covering goods which are or are to become fixtures and conforming to the requirements of subsection (5) of section 84-9-402." K.S.A. 84-9-313(1)(b). The parties do not dispute that Western Resources complied with K.S.A. 1993 Supp. 84-9-402(5).

Priority of Western Resources' security interest as against Capitol Federal's interest in the real estate is controlled by 84-9-313:

"(4) A perfected security interest in fixtures has priority over the conflicting interest of an encumbrancer or owner of the real estate where
(a) the security interest is a purchase money security interest, the interest of the encumbrancer or owner arises before the goods become fixtures, the security interest is perfected by a fixture filing before the goods become fixtures or within ten (10) days thereafter, and the debtor has an interest of record in the real estate or is in possession of the real estate."

"Encumbrance" is defined to include "real estate mortgages and other liens on real estate and all other rights in real estate that are not ownership interests." K.S.A. 1993 Supp. 84-9-105(1)(g). Western Resources' financing statement was filed within 10 days of installation. In light of the foregoing, Western Resources has

a 84-9-313(4)(a) priority interest in the furnace and air conditioner as fixtures. What is at issue here, at least in part, is whether Western Resources' interest extends to the real estate or if it is limited solely to the furnace and air conditioner.

Although this is an appeal from a summary judgment, the question presented requires interpretation of statutes and, therefore, we are presented with a question of law. *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992). When determining a question of law, this court is not bound by the decision of the district court. *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986).

K.S.A. 84-9-102(1) states that Article 9 applies "(a) to any transaction . . . which is . intended to create a security interest in personal property or fixtures." Real estate is not mentioned. K.S.A. 84-9-104(j) states that Article 9 excludes from coverage "the creation or transfer of an interest in or lien on real estate," except for fixtures as considered under 84-9-313. See Kansas Comment 1983 to 84-9-104(j). By its language, 84-9-313(4)(a) limits Western Resources' priority to an interest in only the *fixtures* as against a possible interest by one holding an interest in the real estate. See Official UCC Comment 4 and Kansas Comment 1983 to subsection (4). The interests of Western Resources and Capitol Federal overlap in the furnace and air conditioner; Western Resources' interest does not extend beyond the furnace and air conditioner.

If there remains any doubt that Western Resources' interest is limited to an interest in the furnace and air conditioner as fixtures, the following authorities provide language to that effect: *Maplewood Bank v. Sears, Roebuck*, 265 N.J. Super. 25, 28, 625 A.2d 537 (1993); *Sears Roebuck & Co. v. Norr*, 10 U.C.C. Rep. Serv. 1258, 1262 (Md. 1972); 9 Anderson on the Uniform Commercial Code § 9-313:16 (1985).

## II. DOES WESTERN RESOURCES HAVE A RIGHT TO THE REAL ESTATE FORECLOSURE PROCEEDS?

Capitol Federal contends the court erred by denying its motion for summary judgment and by setting aside from the proceeds of the foreclosure sale the amount claimed by Western Resources. For support, Capitol Federal relies on the authorities cited above

to the effect that, because Western Resources does not have an interest in the real estate, it should not be able to claim a portion of the proceeds arising from the sale of the real estate. Standing alone, this argument does not resolve whether Western Resources has a right to the real estate proceeds because arguably a portion of those proceeds were generated from the sale of the fixtures which were sold when the real estate was sold.

The real question is whether the UCC permits Western Resources to proceed against the foreclosure sale proceeds. Here, again, the issue concerns interpretation of statutes and is a question of law. Western Resources' remedy, as provided by the UCC, is as follows:

> "When the secured party has priority over all owners and encumbrancers of the real estate, he may, on default, subject to the provisions of part 5, remove his collateral from the real estate but he must reimburse any encumbrancer or owner of the real estate who is not the debtor and who has not otherwise agreed for the cost of repair of any physical injury, but not for any diminution in value of the real estate caused by the absence of the goods removed or by any necessity for replacing them. A person entitled to reimbursement may refuse permission to remove until the secured party gives adequate security for the performance of this obligation." K.S.A. 84-9-313(8).

Capitol Federal argues repossession of the furnace and air conditioner or bringing its claim against the collateral to judgment under K.S.A. 84-9-501 were the only remedies available to Western Resources. Western Resources did not pursue an action pursuant to 84-9-501 and does not rely upon 84-9-501 for its claim here. Instead, Western Resources relies upon 84-9-313(8) as the basis for its claim. Western Resources emphasizes that 84-9-313(8) states that a secured party "may" repossess the collateral and that use of this term implies that other remedies are available. Western Resources argues that once Capitol Federal instituted the foreclosure proceedings, Western Resources was entitled to have its lien paid first from the proceeds of the sale.

Neither the language of 84-9-313(8) nor the comments answer the question with which we are presented. There are only a few authorities that address the issue, and there are no Kansas cases among those authorities. The Kansas Comment indicates that the 84-9-313(8) remedy is not exclusive: In addition to proceeding pursuant to K.S.A. 60-1005 or K.S.A. 60-1006 for replevin against

the personal property, a "fixture financer may choose to back off from its Article 9 remedy and proceed under the Kansas mechanic's lien statute." The interrelationship between fixture foreclosure and mechanic's lien enforcement appears to be a separate issue from that considered here. See Clark, The Law of Secured Transactions Under the Uniform Commercial Code § 9.07[6][a] and [b] (1993).

At least one commentator has advocated a clarification of UCC § 9-313 to the effect that those who have a security interest in fixtures are not required to remove their collateral. Shanker, *An Integrated Financing System for Purchase Money Collateral: A Proposed Solution to the Fixture Problem Under Section 9-313 of the Uniform Commercial Code*, 73 Yale L.J. 788, 804-05 (1964). Professor Shanker notes that although one might get the impression that removal is the only method by which such a secured party could redeem an interest, if that secured party does not have a priority interest over the interest in the real estate, there is no right to remove the fixture under § 9-313(5). Further, there are instances where a secured party would not want to remove the collateral because, once separated from the real estate, the collateral would be worthless. This would be true when the collateral is customized to adapt to the real estate. For further support of his position, Professor Shanker argues there are times when the secured party should not be allowed to remove collateral, as where the collateral is heating equipment in a large apartment building and the creditor seeks to remove the same in the dead of winter. 73 Yale L.J. at 804-05. Professor Shanker opines: "Where the fixture secured party has no right of removal or, having the right, prefers not to exercise it, the Code, as it now stands, probably authorizes the fixture secured party to employ judicial foreclosure proceedings to enforce his security interest." 73 Yale L.J. at 804. He continues, though, by stating that "this result is not clear, and the right to resort to judicial foreclosure ought not to be left to doubt. Clarifying amendments to Section 9-313 or its official commentary are obviously needed." 73 Yale L.J. at 804.

Western Resources argues *Lewiston Bottled Gas v. Key Bank*, 601 A.2d 91 (Me. 1992), is directly on point. However, at issue there was whether particular collateral constituted fixtures and

whether the creditor claiming an interest in that collateral had a priority interest over the mortgagee's interests. The second issue was not reached because the parties agreed to allow the mortgagee to proceed with foreclosure and to litigate the issue of title regarding the claimed fixture-collateral later. 601 A.2d at 93. Western Resources also emphasizes *Parsons v. Lender Service, Inc.*, 801 P.2d 739 (Okla. App. 1990), but it, too, is a priority case and does not reach the issue considered in this case.

Capitol Federal cites several cases for the proposition that a fixture creditor cannot pursue the proceeds from a real estate foreclosure sale. These are summarized in Clark, § 9.07[6][a]:

"Other decisions, however, reflect a desire by the fixture financer to sidestep the repossession remedy under § 9-313. For example, in *Dry Dock Savings Bank v. DeGeorgio*, a fixture financer argued that it was entitled to a priority chunk of the proceeds generated by foreclosure sale of the real estate. The court emphasized that § 9-313, while it provides a remedy in rem against the fixture itself, grants no rights as against the real estate. To the same effect is *Sears, Roebuck & Co. v. Norr*, where Sears had a perfected security interest in kitchen cabinets and other items as fixtures on the debtor's leasehold property. Upon the debtor's default, Sears sought to have a trustee appointed to sell the leasehold interest and apply the proceeds to its claim. The court would have none of it, holding that Sears' right was limited to repossessing the fixtures themselves subject to reimbursing the owner for any physical damages caused to the realty.

"In *Nu-Way Distributing Corp. v. Schoikert*, a fixture financer who did not want to repossess the fixture sought an in personam judgment for recovery of the purchase price of the fixture against a subsequent bona fide purchaser of the real estate. The court correctly held that § 9-313 does not provide a remedy against the real estate itself, even if the fixtures are custom-made and are of no value if repossessed, and even if the purchaser of the realty is using them. The fixture financer presumably retains its rights to repossess the fixture as against the purchaser of the realty if it had properly perfected prior to the real estate sale."

The foregoing passage does not fully represent the intricacies of each of the three cases cited. As Western Resources notes, the language in *Dry Dock Savings Bank v. DeGeorgio*, 61 Misc. 2d 224, 305 N.Y.S. 2d 73 (1969), is dicta. The *Norr* decision can be criticized on the basis that the court's rationale is imperfect: It misrepresented the language and meaning of § 9-313(4) and (5). See Editors' note, 10 U.C.C. Rep. Serv. at 1260. *Nu-Way Distributing Corp. v. Schoikert*, 44 App. Div. 2d 840, 355 N.Y.S.2d 475 (1974), is arguably factually distinguishable because

it concerned a creditor's attempt to recover from a subsequent purchaser of real property. However, *Nu-Way* cites *Dry Dock* for support. 44 App. Div. 2d at 841.

A recent case not considered by the parties, *Maplewood Bank v. Sears, Roebuck*, 265 N.J. Super. 25, contains facts similar to those present here. Plaintiff bank held a first and prior mortgage on realty, and Sears later secured an interest in a number of kitchen fixtures. The fact that Sears was secured and held a priority interest in those fixtures was undisputed. When defendants defaulted on both obligations, the bank filed for foreclosure. Sears answered, seeking a declaration of priority and requesting that the court order the bank to pay Sears the amount due under its agreement. Sears' response was rejected and it eventually appealed, arguing it should be entitled to receive from the proceeds of a foreclosure sale the difference between the value of the realty with Sears collateral and the value of the realty after that collateral had been removed. After reviewing the language of § 9-313(8) as adopted in New Jersey, the court stated: "Sears has two options: removal of the fixtures or foregoing removal of the fixtures." 265 N.J. Super. at 29. The court then considered *Dry Dock* and *Nu-Way* and noted the approach advocated by Sears had only been adopted in Louisiana, where the legislature had added the following language to § 9-313(8): " 'A secured party may also demand separate appraisal of the fixtures to fix his interest in the receipts of the sale thereof in any proceedings in which the real estate is sold pursuant to execution upon it by a mortgagee or other encumbrancer.' " 265 N.J. Super. at 30.

The *Maplewood* court also examined the Shanker article in 73 Yale L.J. 788, concluding:

"We decline to adopt the creative approach articulated by Professor Shanker. Such action, in our view, would be legislating. We prefer the approach followed in Louisiana where the legislature, upon its preference and initiative, provided the innovative remedy sought by Sears. To adopt Sears' argument in the absence of legislation, would mean that a mortgagee's security interest could be impaired substantially without the Legislature pronouncing an intention to do so. Any modification of long established fundamental property rights of purchase money mortgagees, must be done in some straight forward manner and may not be implied from the existing statute. The fact that fixtures may be custom made does not require any different result." 265 N.J. Super. at 31.

In Hawkland, Uniform Commercial Code Series § 9-313:07, p. 331 (1991), it is stated:

"If the fixture financer has priority under section 9-313 but affirmatively opts not to remove his collateral either because he just does not want to or because reimbursement costs will make removal economically prohibitive or impracticable, the question arises as to what his other options might be. In these circumstances, it seems clear that he should be able to proceed in accordance with the 9-500's. That is, he should be entitled to reduce his claim to judgment, and, if the fixture is equipment, render it unusable on the site. In this one situation, he arguably should not be able to await the foreclosure sale of the real estate and claim a first priority to its proceeds. The reason for the distinction here is simple: his primary protective right, the right to remove the collateral, is not being hindered by virtue of his subordination or by virtue of the debtor's actions. Given the difficulty of valuing his interest vis-a-vis that of the mortgagee, he should not be able to insist upon a right to foreclosure sale proceeds when he can make himself fully whole by removing his collateral. The fact that he is adversely affected by virtue of his reimbursement obligation or that he believes it simpler to await the foreclosure by the real estate encumbrancer should not entitle him to first crack at the foreclosure sale proceeds, particularly given the difficulties of valuation."

Capitol Federal and Western Resources advance additional arguments that are less persuasive. Capitol Federal argues that to allow Western Resources a portion of the proceeds is violative of the general rule that the first creditor to file a financing statement receives priority. However, as Western Resources notes, fixture filing is intended to be an exception to the general rule: "The principal exception to the general rule of priority stated in Comment 4(b) based on time of filing or recording is a priority given in paragraph (4)(a) to purchase money security interests in fixtures as against *prior* recorded real estate interests." Official UCC Comment (4)(a) to 84-9-313.

Capitol Federal argues that because it did not receive notice of the security statement and filing and did not consent to the addition of the furnace and air conditioner to the real estate, to allow Western Resources a portion of the proceeds would permit a taking without due process of law, contrary to the Fourteenth Amendment to the United States Constitution. This argument fails because the Fourteenth Amendment's prohibition against the taking of property without due process applies only to govern-

mental bodies. As Western Resources points out, the state action necessary for this due process argument is lacking.

Western Resources also argues that to allow Capitol Federal to keep all of the foreclosure proceeds would result in a windfall for Capitol Federal. This argument ignores the fact that Western Resources had the right to remove the fixtures.

Western Resources argues Capitol Federal would be in no worse position if it paid a portion of the foreclosure proceeds to Western Resources or if Western Resources removed the furnace and air conditioner. This may be true, but it is just as possible that the furnace and air conditioner, whether because of their condition or other factors, add little to the value of the home. Further, to allow Western Resources a prior right to the amount owed it by the Hogers would be to provide Western Resources, vicariously, the security usually associated with real estate. In other words, Western Resources' chance, upon default, of recovering amounts owed it would no longer be tied solely to the risks involved in reselling Western Resources' collateral.

This leads us to Western Resources' next point, that once its collateral is removed it is virtually worthless. Quoting Official UCC Comment 8 to 84-9-313, Western Resources argues that to avoid this situation, which would "chill the availability of short-term credit for modernization of real estate by installation of new fixtures" rather than encourage "purchase money fixture financing," the legislature passed § 9-313. The Official UCC Comments do not indicate that this was, in fact, the reason § 9-313 was passed. It was passed to solidify the law concerning priorities of fixtures. Western Resources' argument is not persuasive because the risk involved in a security interest in personal property was known to Western Resources from the outset. Perhaps this is why the court in *Dry Dock* noted that to allow only removal by the fixture creditor

"may turn out to be a somewhat Pyrrhic victory, giving the lienor a pile of dubious scrap not worth the labor of getting it off the house, repairing nail holes, etc. In other words, it may hurt the mortgagee without doing the lienor any corresponding good. However, that is something for the parties to consider and beyond the control of the court." 61 Misc. 2d at 226.

Similarly, in *Nu-Way*, the court did not find it persuasive that the custom nature of the fixtures may render them worthless when removed from the real estate: "A creditor in plaintiff's position must be assumed to have known and understood the risk he was taking when he agreed to allow the goods to stand as collateral and the risk should remain his." 44 App. Div. 2d at 841.

After reviewing the foregoing authorities, we find *Maplewood* and the Hawkland article are persuasive. Clearly, the UCC does not grant Western Resources an interest in real estate beyond its interest in the furnace and air conditioner as fixtures. To allow it to proceed against the real estate foreclosure sale proceeds would effectively give Western Resources an interest in the real estate beyond its interest in the fixtures because, on default by the Hogers, Western Resources' possibility of recouping the amounts it claims would be tied not simply to the value of its collateral, but to the value of the real estate. As is the case here, Western Resources would be recovering the entire amount of its claim, despite the actual value of the fixtures. Even if the fixtures were appropriately valued, the fixture creditor would benefit from the synergy of the fixture-real estate relationship. Although the law is such that a mortgagee may benefit by the addition of personal property to real estate (see 84-9-313[7]), there is nothing in the UCC that indicates the interests of fixture creditors should be enhanced by the real estate to which personal property is affixed.

We conclude the district court erred in finding Western Resources had priority in the foreclosure sale proceeds over Capitol Federal's previously recorded mortgage. The effect of this ruling was to improperly extend Western Resources's purchase money security interest in fixtures to the proceeds obtained from the sale of all the real estate. As between the first mortgage holder and the holder of a purchase money security interest in fixtures, the first mortgage holder is entitled to priority in funds realized from foreclosure sale of the mortgaged real estate.

Reversed and remanded with directions to pay to Capitol Federal the monies retained from the foreclosure sale proceeds.