265 N.J. Super. 25 (1993)
625 A.2d 537
MAPLEWOOD BANK AND TRUST, PLAINTIFF-RESPONDENT,
v.
SEARS, ROEBUCK AND CO., DEFENDANT-COUNTER-CLAIMANT APPELLANT, AND EDWARD CAPERS, TERRE CAPERS AND NEW JERSEY SAVINGS BANK, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 26, 1993.
Decided May 27, 1993.
*26 Before Judges COLEMAN, J.H. and ARNOLD M. STEIN.
Steven P. McCabe argued the cause for appellant (Pressler and Pressler, attorneys; Mr. McCabe on the brief).
Alan R. Ostrowitz argued the cause for respondent (Ostrowitz & Ostrowitz, attorneys; Laura J. Hyman on the brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
This appeal requires us to decide whether a first mortgage lender or a fixture financier is entitled to priority in the funds realized from a foreclosure sale of the mortgaged premises. We hold that a first mortgagee is entitled to priority in such funds.
Plaintiff Maplewood Bank and Trust is the holder of a first purchase money mortgage dated September 20, 1988 and recorded on October 5, 1988 on premises owned by defendants Edward and Terre Capers. The original mortgage debt was for $121,000. On *27 May 31, 1989, Sears, Roebuck and Company (Sears) filed a Financing Statement covering a completely new kitchen, consisting of "new countertops, cabinets, sinks, disposal unit, dishwasher, oven, cooktop and hood," installed in the mortgaged premises at the request of the Capers after they executed a Security Agreement. The Financing Statement, known as the UCC-1 form, filed by Sears gave notice that Sears had a security interest in the new kitchen installed in the mortgaged premises in the sum of $33,320.40.
On August 18, 1989 the Capers executed a second mortgage on the previously mortgaged premises to defendant New Jersey Savings Bank for the sum of $34,000. That mortgage was recorded on August 23, 1989.
When the Capers eventually defaulted in the payments due plaintiff and Sears, plaintiff declared the entire unpaid balance on the mortgage was due. Nonpayment of the entire balance plus interest prompted plaintiff to file its complaint for foreclosure on November 5, 1990 and an amended complaint on or about December 6, 1990. Sears filed an answer and a counterclaim. Sears sought a declaration that its debt was "prior to the mortgage of the plaintiff" and, among other things, to compel plaintiff to "pay [Sears] the amount due on its Agreement." The essence of the counterclaim was that under N.J.S.A. 12A:9-313, Sears was entitled to priority over the plaintiff in the funds realized from the anticipated foreclosure sale. Sears' answer and counterclaim were stricken on July 26, 1991, and the matter proceeded as an uncontested foreclosure action. A final judgment in foreclosure was entered on February 28, 1992.
Sears has appealed the dismissal of its counterclaim. It argues that the priority given Sears as a purchase money security interest holder under the Uniform Commercial Code "applies to the proceeds of a judicial sale instituted" by a purchase money mortgagee. This is the same issue Sears raised in Orange Savings Bank v. Todd, 48 N.J. 428, 430, 226 A.2d 178 (1967), wherein Sears asserted that it was entitled to priority over the purchase money *28 mortgagee "in the funds realized on foreclosure." Ibid. The Supreme Court concluded that although the briefs raised "interesting and important questions under the secured transactions provisions of the Uniform Commercial Code (N.J.S.A. 12A:9-101 et seq.), we find no present occasion to deal with any of them in view of the position now taken by the parties." Ibid. In the present case, we have considered the contention raised by Sears and conclude that it is unsound and must be rejected.
It is undisputed that the new kitchen Sears installed and financed satisfies the definition of a fixture under N.J.S.A. 12A:9-313(1)(a). It is also undisputed that Sears obtained a purchase money security interest in the fixture to secure full payment. See N.J.S.A. 12A:9-107(a). Sears perfected its security interest by filing a financing statement (UCC-1) covering the fixtures in the Hunterdon County Clerk's Office where the first mortgage held by plaintiff was recorded. N.J.S.A. 12A:9-313(1)(b) and N.J.S.A. 12A:9-402(5).
The purchase money security interest of Sears attached to the goods or chattels before they became affixed to the realty as fixtures. N.J.S.A. 12A:9-313(4)(a). By perfecting the security interest, Sears was able to make its security interest in the fixtures permanent, or until paid or discharged. The point to be made is that Sears' security interest is limited to the fixtures and does not extend to the realty otherwise.
By statute, Sears' purchase money security interest, when perfected, "has priority over the conflicting interest of an encumbrancer or owner of the real estate...." N.J.S.A. 12A:9-313(4). This concept was expressed more clearly in the version of the statute which predated the 1981 amendments. The prior version of N.J.S.A. 12A:9-313(2) provided "A security interest which attaches to goods before they become fixtures takes priority as to the goods over the claims of all persons who have an interest in the real estate except as stated in subsection (4)." This means the purchase money security interest of Sears in the goods or chattels *29 which became fixtures gives it a "super priority" as to those goods or chattels which became fixtures.
Next we must focus upon the remedies available to a purchase money security interest lienholder upon default by the debtor. Sears contends it should be entitled to receive from the proceeds obtained at the foreclosure sale, the difference between the value of the realty with the new kitchen and the value of the realty after the new kitchen has been removed. We reject this entire approach as an inappropriate remedy absent authorization by statute.
The Uniform Commercial Code, as adopted in New Jersey, provides at N.J.S.A. 12A:9-313(8) that:
When the secured party has priority over all owners and encumbrancers of the real estate, he may, on default, subject to the provisions of subchapter 5, remove his collateral from the real estate but he must reimburse any encumbrancer or owner of the real estate who is not the debtor and who has not otherwise agreed for the cost of repair of any physical injury, but not for any diminution in value of the real estate caused by the absence of the goods removed or by any necessity of replacing them.... (Emphasis added).
Thus based on the plain language of § 9-313(8), Sears has two options: removal of the fixtures or foregoing removal of the fixtures.
New York, the only other jurisdiction which has addressed the issue, rejected Sears' argument. In Dry Dock Savings Bank v. DeGeorgio, 61 Misc.2d 224, 305 N.Y.S.2d 73 (1969) the defense asserted a lien superior to the mortgage by reason of a properly filed fixture financial statement covering aluminum siding on a house which was the subject of a foreclosure action. The mortgage was recorded prior to the time the fixture financial statement was filed.
The court held that under § 9-313 the purchase money security interest holder may remove his fixtures from the real estate, but must reimburse any owner or encumbrancer for the cost of repair. Id. 305 N.Y.S.2d at 75. The court observed:
He merely has the right to remove the goods after posting security to repair any damage. This may turn out to be a somewhat Pyrrhic victory, giving the lienor a *30 pile of dubious scrap not worth the labor of getting it off the house, repairing nail holes, etc.... [Removal] may hurt the mortgagee without doing the lienor any corresponding good. However, that is something for the parties to consider and beyond the control of the court.
Ibid.
In Nu-Way Distributing Corp. v. Schoikert, 44 A.D.2d 840, 355 N.Y.S.2d 475, 14 UCC Rep.Serv. 1058 (N.Y. App. Div. 1974), plaintiff instituted an action to recover the price of fixtures (kitchen cabinets, etc.) sold by plaintiff, after the goods or chattels had been installed in the realty as fixtures. The Appellate Division construed § 9-313 "as merely providing the creditor with the statutory right of repossession, provided that he first comply with the security provision of the statute." Id. 355 N.Y.S.2d at 476.
The Appellate Division opined that even if the purchase money security interest holder failed or did not desire to repossess the fixtures upon default, that lienholder was not entitled to maintain an action for the purchase price against a subsequent purchaser of the real property. Ibid. The court further held that the same rule would apply even in cases where the fixtures are custom-made and would be of no use or value should they be repossessed. The underlying rationale for the rule was that such a lienholder as the one involved in Nu-Way must be assumed to have known and understood the risk he was taking.
Sears' approach has been adopted only in Louisiana and there it was based on the legislature's definitive modification of § 9-313(8) by adding the following language:

A secured party may also demand separate appraisal of the fixtures to fix his interest in the receipts of the sale thereof in any proceedings in which the real estate is sold pursuant to execution upon it by a mortgagee or other encumbrancer. [Uniform Commercial Code § 9-313, 3 U.L.A. 332 to 23 (1992)] (Action in Adopting Jurisdictions)].
The most compelling authority supportive of Sears' position is an article "An Integrated Financing System for Purchase Money Collateral: A Proposed Solution to the Fixture Problem Under Section 9-313 of the Uniform Commercial Code" by Morris G. Shanker. 73 Yale L.J. 795 (1964). In this article, Professor Shanker states "[w]here the fixture secured debt is not paid, *31 removal of the fixture seems to be the favorite means of foreclosing on the fixture security interest." Id. at 804.
The article goes on to cite certain instances where the fixture secured party may prefer not to exercise his removal rights. For example, if an elevator was designed for a specific building, it would have little or no value apart from that building. Ibid. Other cited examples include situations where a fixture secured party should be required to use judicial foreclosure proceedings even though he has the right of removal. For example a secured party should not be free to remove a heating system in a large apartment building in the dead of winter, even where the debtor defaulted.
Shanker opines that "the Code, as it now stands, probably authorizes the fixture secured party to employ judicial foreclosure proceedings to enforce his security interest" in lieu of removal of the fixtures. Ibid. He states that limiting the remedy to the right to remove or choosing not to remove, in no way detracts from the fixture secured party's paramount security interest in his collateral; it merely requires him to enforce his security interest in a sensible and equitable fashion. Id. 805.
We decline to adopt the creative approach articulated by Professor Shanker. Such action, in our view, would be legislating. We prefer the approach followed in Louisiana where the legislature, upon its preference and initiative, provided the innovative remedy sought by Sears. To adopt Sears' argument in the absence of legislation, would mean that a mortgagee's security interest could be impaired substantially without the Legislature pronouncing an intention to do so. Any modification of long established fundamental property rights of purchase money mortgagees, must be done in some straight forward manner and may not be implied from the existing statute. The fact that fixtures may be custom made does not require any different result. See Nu-Way, supra, 355 N.Y.S.2d at 476.
*32 We are also persuaded that Sears is not entitled to any remedy, other than removal of the fixtures, based on equitable principles. Sears knew its remedy was limited to removal upon default. Indeed, the Retail Installment Contract and Security Agreement prepared by Sears and signed by the Capers provided that the Capers were giving Sears a "security interest under the Uniform Commercial Code in all merchandise purchased under this contract ... [and] the security interest allows Sears to repossess the merchandise" in the event the Capers did not make payments as agreed. (Emphasis added).
Summary judgment in favor of plaintiff is affirmed.