RITTENBAND, J.
 

 The present case deals with a matter of first impression in this state. On December 9,1988, the named defendant, Daniel F. Bennett, mortgaged his home in the town of Stafford to Dime Real Estate Services Connecticut, Inc., for $75,000. The mortgage was recorded on December 16,1988. The mortgage was subsequently assigned to the plaintiff. The defendant Tolland Bank (bank) filed a UCC-1 financing statement under the Uniform Commercial Code, which was recorded August 7, 1990, in the Stafford land records.
 

 There is no dispute regarding the following material facts: (1) The UCC-1 was for a fixture on the subject property, namely, a swimming pool. It is a purchase money security interest; (2) the purchase money security interest was recorded subsequent to the plaintiffs mortgage, in a timely and proper manner.
 

 On September 19, 1994, the plaintiff filed a motion for summary judgment as to the bank, in essence, asking the court to declare that the purchase money security interest has priority over the plaintiffs mortgage as to the fixture only. The bank claims that the purchase money security interest has priority over the plaintiffs mortgage as to the
 
 entire fee
 
 including, but not limited to, the swimming pool.
 

 Under § 384 of the Practice Book, a court will grant a motion for summary judgment “if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” (Internal quotation marks omitted.)
 
 Haesche
 
 v.
 
 Kissner,
 
 
 *160
 
 229 Conn. 213, 217, 640 A.2d 89 (1994);
 
 Scrapchansky
 
 v.
 
 Plainfield,
 
 226 Conn. 446, 450, 627 A.2d 1329 (1993). “The test is whether a party would be entitled to a directed verdict on the same facts.” (Internal quotation marks omitted.)
 
 Haesche
 
 v.
 
 Kissner,
 
 supra, 217. “In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party.” (Internal quotation marks omitted.)
 
 Connecticut Bank & Trust Co.
 
 v.
 
 Carriage Lane Associates,
 
 219 Conn. 772, 781, 595 A.2d 334 (1991).
 

 Both parties agree that General Statutes § 42a-9-313 (4) (a) governs this issue. Section 42a-9-313 (4) provides in relevant part: “A perfected security interest in fixtures has priority over the conflicting interest of an encumbrancer or owner of the real estate where (a) the security interest is a purchase money security interest, the interest of the encumbrancer or owner arises before the goods become fixtures, the security interest is perfected by a fixture filing before the goods become fixtures or within ten days thereafter, and the debtor has an interest of record in the real estate or is in possession of the real estate . . . .”
 

 Both parties agree further that the purchase money security interest in question complies with the terms of § 42a-9-313 (4) (a). The only question is the priority of the purchase money security interest.
 

 Section 42a-9-313 (4) (a) is part of article nine of the Uniform Commercial Code (UCC), as amended in 1972, and adopted in Connecticut in 1976. There are no cases in Connecticut interpreting this section of the statutes nor does the Connecticut legislative history provide any help as to the intent of the legislature. Connecticut merely adopted the existing UCC.
 

 It is relevant, therefore, to look at the UCC and its legislative history regarding this section. Section 9-313 of the UCC is entitled “Priority of Security Interests in
 
 *161
 
 Fixtures,” as is § 42a-9-313. A title of an act can be considered in interpreting the meaning of a statute. See
 
 Hartford Electric Light Co.
 
 v.
 
 Water Resources Commission,
 
 162 Conn. 89, 98, 291 A.2d 721 (1971). The title, therefore, can be construed as limiting the priority to the fixture only.
 

 Article nine of the UCC governs only the creation of security interests in personal property or fixtures, and the sale of accounts or chattel paper. General Statutes § 42a-9-102. Article nine, therefore, does not provide for the creation of security interests in real estate apart from security interests in fixtures. The limitation of coverage already explicitly stated in § 42a-9-102 is reiterated in General Statutes § 42a-9-104, which provides in relevant part that “[t]his Article does not apply . . . (j) except to the extent that provision is made for fixtures in section 42a-9-313, to the creation or transfer of an interest in or lien on real estate . . . .” Under article nine of the UCC, a security interest may be created in goods that are fixtures, but article nine does not provide for the creation of security interests in the real estate to which the fixture is attached.
 

 It should also be noted that § 42a-9-313 (8) provides the only remedy to the secured party in the event of default; namely, the authority to remove the collateral (fixture) from the real estate. Nowhere in § 42a-9-313 or in any other provision of the General Statutes is the secured party given the authority to foreclose on the real estate as it would be able to do if the purchase money security interest were an encumbrance on the land records that applied to the entire fee. If there is no remedy as to the entire fee, then there is no priority as to the entire fee. There is no remedy (i.e., foreclosure) as to the entire fee even if the purchase money security interest was recorded after the plaintiffs mortgage and was subservient in priority to the mortgage. The legislature certainly had an opportunity to provide such a
 
 *162
 
 remedy, and its failure to do so indicates under the rules of statutory construction that it intended the provisions of the aforementioned § 42a-9-313 (8) to be the only remedy for the holder of a purchase money security interest. It is evidence of the intent of the drafters of the UCC and of the legislature, which could have, in adopting the UCC, added another remedy, that the purchase money security interest is not intended to have priority as to the entire fee.
 

 Also, if the purchase money security interest were to have priority as to the entire realty, then, upon a sale by the foreclosing first mortgagee to a third party, that party’s lender would require the purchase money security interest to be paid off by the foreclosing first mortgagee, just like town taxes, before granting a mortgage loan to the third party purchasers. There is no evidence that this was intended by either the drafters of the UCC or by the Connecticut legislature.
 

 Further, as to the legislative history of article nine of the UCC, Attorney Peter Coogan, a member of the panel that adopted the amendments in 1972, and a consultant to the UCC review committee, commented on this section in a program in Washington, D.C., onAugust 8, 1973, and gave an example in which he referred to “protection for my beer vat against a prior holder of an interest in the real estate.” Coogan was referring to protecting his interest in the fixture, not his interest as to the realty. 29 Bus. Law. 301 (1974). An inteipretation in the Uniform Commercial Code Series published by Clark, Boardman and Callaghan cited as Hankland, Lord & Lewis, UCC series § - (Art 9) (November, 1991) states that: “Subsections 9-313 (4) through (7) then establish the priority rules for ironing out disputes when competing claims are made to
 
 the goods as fixtures”
 
 (Emphasis added.) Notice that nothing is said regarding priority as to the interest therein as it concerns the real estate.
 

 
 *163
 
 The only three cases found in other jurisdictions all uphold the interpretation that the purchase money security interest has priority as to the fixture and not as to the real estate.
 
 [1]
 

 Sears, Roebuck & Co.
 
 v.
 
 Norr,
 
 10 U.C.C. Rep. Serv. 1258 (Md. 1972), states that the subject section “must be considered but in the light of the entire act which is not designed to create liens on realty . . . the lien of the plaintiff extended no further than to the fixtures, that there was no interest in the balance of the real property as such . . . .”
 

 Maplewood Bank & Trust
 
 v.
 
 Sears, Roebuck & Co.,
 
 265 N.J. Super. 25, 625 A.2d 537 (1993), aff'd, 135 N.J. 97, 638 A.2d 140 (1994), is the most recent case and was decided after the change in the statute was made. Since there is no essential difference in the statute as to the issue now before the court (i.e., whether the purchase money security interest takes priority as to the fixture or as to the realty), the change is insignificant now as to the aforementioned three decisions.
 
 Maplewood Bank & Trust,
 
 relying on previous case law
 
 [2]
 
 held that Sears’ purchase money security interest in the fixtures gave “it a ‘super priority’ [only] as to those goods or chattels which became fixtures.” Id., 529. After determining that Sears had priority only as to the fixture, the court in
 
 Maplewood Bank & Trust
 
 then addressed what remedies were available to a purchase money security interest lien holder upon the debtor’s
 
 *164
 
 default on the mortgage. It held that “based on the plain language of § 9-313-(8)” the only options available are removal of the fixtures or forgoing removal of the fixtures. Id.
 

 The court is well aware of the bank’s contention that the drafters of the code described the puipose of this section to be to encourage purchase money fixture financing, which will result in the modernization and development of real estate. The court believes that it does give priority as to the fixture, and, in some cases, it would be practical to remove the fixture. Further, any sale or strict foreclosure would be subject to the purchase money security interest.
 

 Under the subject statute, any mortgagee or encumbrancer takes subject to the purchase money security interest whereas, prior to this statute, the fixture was part of the fee estate and could be taken by the encumbrancer in its foreclosure action. Now, the fixture can be removed under the purchase money security interest. Although removal admittedly is impractical in the present case of an inground swimming pool, a fact of which the purchase money security interest lender was aware well in advance, it is not impractical with all fixtures. This, plus the fact that any foreclosing party takes subject to the purchase money security interest, certainly is designed to encourage purchase money fixture financing since it gives rights to the holders of a purchase money security interest that did not exist prior to the subject statute.
 

 It is certainly not clear that the drafters intended anything else. If they had wished to go further, they would have stated that it is a priority as to the real estate, and would have provided a remedy other than removal. Failure so to provide indicates they were not prepared to go that far.
 

 
 *165
 
 As to the claim of possible title problems, the UCC-1 is recorded under the name of the owner of the property as the grantor and this recording makes everyone aware of its existence. The realty can be sold subject to the UCC-1, and, if a prospective buyer refuses to buy with the UCC-1 on the land records, either on his own or as a result of requirements of his lender, then the seller will be forced to pay it, which would be the result the bank would want in the present case. Perhaps, there would only be a reduction in the purchase price, and maybe it would not be paid off. The remedy, then, is to remove the fixtures or to wait until someone requires the purchase money security interest to be paid. Regardless, it is not a title problem.
 

 For all of the foregoing reasons, the court finds that § 42a-9-313 (4) (a) gives the bank’s UCC-1 purchase money security interest priority over the plaintiff only as to the fixture itself.
 

 The plaintiff is entitled to judgment on that issue as a matter of law. Accordingly, the plaintiffs motion for summary judgment is granted.
 
 [3]
 

 [1]
 

 Two were decided before the statute changed in 1972, and one,
 
 Maplewood Bank & Trust
 
 v.
 
 Sears, Roebuck & Co.,
 
 265 N.J. Super. 25, 625 A.2d 537 (1993), aff'd, 135 N.J. 97, 638 A.2d 140 (1994), after the statute changed. As to the issue before the court, however, namely, whether the goods, before or after becoming fixtures, have priority over the entire real estate, the meaning was not materially changed.
 

 [2]
 

 The court relied on
 
 Dry Dock Savings Bank
 
 v.
 
 DeGeorgio,
 
 61 Misc. 2d 224, 226, 305 N.Y.S.2d 73 (1969), holding that a perfected fixture holder does not have a right to the proceeds of a foreclosure sale. Instead, the holder has only a right to remove the goods after posting security to repair any damage done as a result of the removal. Id.
 

 [3]
 

 Notice and advertising in a foreclosure by sale and in strict foreclosure documents should relate that the sale or redemption is subject to a UCC-1 purchase money security interest in the fixture.