2001 UT 84

W. TUSTIAN, Trustee, Snowbird Trust, Plaintiff,

v.

KAREN H. SCHRIEVER, Defendant and Appellant,

and

Deere Credit Services, Inc., and Brent Madsen, First District Court, Defendants and Appellee.

No. 20000245.

Supreme Court of Utah.

Oct. 5, 2001.

Alyson Draper, Ogden, for plaintiff.

William D. Marsh, Salt Lake City, for defendant Karen H. Schriever.

Paul M. Werner, Mark E. Hindley, Salt Lake City, for defendant Deere Credit Services.

DURRANT, Justice:

¶ 1 Deere Credit Services, Inc., had a perfected security interest in a dealer's inventory of manufactured homes. The dealer affixed one of the manufactured homes to land owned by the dealer and deeded this realty into a trust as security for a loan. Karen H. Schriever later placed a judgment lien on the trust realty; William Tustian also obtained a deed to the realty. When the dealer defaulted on its loan obligations, the trustee sold the land and the affixed manufactured home. After using part of the sale proceeds to pay the dealer's loan balance, the trustee deposited the excess sale proceeds with the First District Court. Deere, Schriever, and Tustian claimed first priority in the excess pro-

ceeds in cross-motions for summary judgment. The First District Court granted Deere's motion and awarded Deere first priority. Schriever appeals this ruling. We reverse and remand, concluding that, under the former Article 9 of the Uniform Commercial Code, which governs this case,[1] Deere's security interest in the affixed manufactured home did not continue in the sale proceeds of realty encompassing the home.

## BACKGROUND

¶ 2 Pinnacle Financial Services, Inc., sold mobile and manufactured homes in Weber County, Utah, under the name Outlook Homes, Inc. In April 1996, Deere agreed to finance Pinnacle's acquisition of manufactured homes. Under the agreement, Deere received a purchase money security interest in Pinnacle's inventory and proceeds. On April 15, 1996, Deere filed a UCC–1 financing statement evidencing its security interest with the Utah Division of Corporations and Commercial Code ("Division of Corporations").

¶ 3 In October 1996, Deere advanced funds to Pinnacle under the security agreement so Pinnacle could purchase a manufactured home. Pinnacle moved the manufactured home to a one-acre lot it owned in Tremonton, Box Elder County, Utah (the "Tremonton property"). At approximately the same time, Pinnacle executed a trust deed for the Tremonton property in favor of Sodberry Ltd. (the "Sodberry trust") as security for a $35,000 loan.

¶ 4 In October 1997, Pinnacle defaulted on its security agreement with Deere in the approximate amount of $42,000. Pinnacle also defaulted on its obligations under the Sodberry trust. After recording a notice of default in November 1997, the Sodberry trustee began taking steps to sell the Tremonton property.

¶ 5 In January 1998, Schriever won a civil judgment against Pinnacle in the amount of $71,168. In March 1998, acting under a writ of execution Schriever had obtained the previous day, the Box Elder County Sheriff attached the Tremonton property.

¶ 6 In February 1998, Tustian filed a mechanic's lien on the Tremonton property, but later abandoned this claim. Tustian also claimed an ownership interest in the Tremonton property based on his acceptance of a quitclaim deed in January 1998 and an assignment of an interest in the entirety in October 1998.

¶ 7 On April 1, 1998, Schriever bought the Tremonton property for $70,000 at a trust deed foreclosure sale administered by the Sodberry trustee. After paying the sale expenses and Pinnacle's loan balance, the trustee deposited $25,155.56 in excess proceeds with the clerk of the First District Court of Box Elder County. The trustee also submitted a letter listing Deere, Schriever, and Tustian among those who might claim an interest in the proceeds. On April 20, 1998, Tustian filed a complaint for the excess proceeds in the First District Court against Schriever and Deere. The district court ruled that it would consider the parties' pleadings as cross-motions for summary judgment.

¶ 8 Finding no genuine issue as to any material fact, the district court resolved the priority dispute as a matter of law. In denying Tustian's motion, the court adopted the "rationale articulated in Schriever's memoranda" that Tustian never acquired a legal interest in the property because of defects in his deed. Having found that Tustian could not claim the proceeds, the court focused on the conflicting claims of Schriever and Deere.

¶ 9 To resolve this conflict, the court relied on U.C.C. Article 9's provisions concerning secured transactions, as implemented in Chapter 9, Title 70A of the Utah Code.[2]

---

**1.** On July 1, 2001, Utah repealed Title 70A, Chapter 9 of the Utah Code, which implemented the former Article 9, and implemented the new Article 9 in Title 70A, Chapter 9a. *See* Uniform Commercial Code—Article 9—Secured Transactions, ch. 252, 2000 Utah Laws 866. We apply the former Article 9 throughout this case. *See* Utah Code Ann. § 70A–9a–702(3) (2001) (stating

that act implementing new Article 9 "does not affect an action, case, or proceeding commenced before th[e] act takes effect" on July 1, 2001).

**2.** *See supra* note 1 (noting that although Chapter 9 applies to this case, it was replaced with Chapter 9a on July 1, 2001).

Since Deere based its claim to the proceeds on its security interest in the manufactured home, the court first considered whether Deere perfected its security interest in the home. To this end, the court turned to section 70A–9–302. Section 70A–9–302 specifies when a filing is required to perfect a security interest and lists the types of security interests to which the filing provisions of Article 9 apply. Subsection 70A–9–302(3)(b) requires holders of security interests in "inventory held for sale" to perfect under Article 9 instead of under certificate of title statutes. Relying on subsection 70A–9–302(3)(b), the court held that Deere perfected a purchase money security interest in the manufactured home on April 15, 1996, by filing a UCC–1 financing statement with the Division of Corporations.

¶ 10 Having determined that Deere was the first to perfect a security interest in the manufactured home, the court then offered two alternative reasons why Deere's security interest had priority over Schriever's judgment lien on the real estate. Under its first line of reasoning, the court recognized that if the mobile home became a fixture (a part of the real estate), Deere's security interest in the home would conflict with Schriever's judgment lien in the real estate. To determine whose interest had priority, the court turned to section 70A–9–313, the U.C.C. provision that reconciles conflicts between fixture financers and encumbrancers of the real estate. Relying on the conflict resolution provision specific to judgment liens, section 70A–9–313(4)(d), the court held that even if the home became a fixture, Deere did not have to record a financing statement in the real estate filing system (a "fixture filing") to maintain priority over Schriever's judgment lien; Deere's filing of the UCC–1 financing statement with the Division of Corporations sufficed.

¶ 11 In an alternative line of reasoning, the court ruled that Deere also would have retained priority in the manufactured home even if the home had remained a chattel instead of becoming a fixture. In support of its premise that the home did not become a fixture, the court interpreted section 59–2–602 as requiring the filing of an "affidavit of affixture" before a mobile or manufactured home becomes part of the real property. Since Deere had not filed this affidavit, the court concluded the home was not "legally affixed" to the Tremonton property. Under this line of reasoning, the manufactured home maintained its separate identity as a "pure" chattel, and thus no conflict arose between Deere's interest in the home and Schriever's interest in the real estate.

¶ 12 Under either alternative, reasoned the court, Deere's perfected security interest continued in the manufactured home until the Sodberry trustee sold it as part of the Tremonton property. To determine whether Deere's security interest continued in the proceeds of the trustee's sale, the court next turned to section 70A–9–306. Subsection 70A–9–306(3)(b) provides that a perfected security interest in collateral continues in the proceeds of the collateral if "a filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds." Noting that Deere's financing statement covered the home, and characterizing the proceeds as "identifiable cash proceeds," the district court ruled that Deere's perfected security interest continued in the proceeds. As a result, the district court ruled that Deere has first priority in the excess proceeds of the trust sale and granted Deere's cross-motion for summary judgment. Citing the arguments in Schriever's motion, the court also summarily concluded that Schriever would have priority over Tustian in any proceeds that remain after Deere satisfies its claim against Pinnacle. Schriever appeals the district court's grant of summary judgment in favor of Deere; Tustian is not a party to the appeal.

## STANDARD OF REVIEW

¶ 13 Summary judgment is appropriate when the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). When reviewing a court's decision to grant summary judgment, we examine the court's legal conclusions for correctness. *Dairy Prod. Servs. v. City of Wellsville*, 2000 UT 81, ¶ 15, 13 P.3d 581.

## ANALYSIS

¶ 14 In granting summary judgment in favor of Deere, the district court relied on two alternative lines of reasoning to conclude that Deere had priority in the excess proceeds of the trustee's sale. One alternative was premised on the manufactured home remaining chattel; the other was premised on the home becoming a fixture. Although Deere advanced arguments in favor of both alternatives in its appellate brief, at oral argument before this court, Deere expressly waived the alternative premised on the manufactured home remaining chattel.

¶ 15 Specifically, during oral argument, Deere's counsel stated the following:

> The one disputed fact is whether or not the mobile home, the modular home, was affixed to the property. But for purposes of this proceeding, we are more than willing, we're happy, to stipulate that it was affixed, sure. We will give [Schriever] that, because it doesn't matter. The reason that it doesn't matter is because resolution of this case hinges, really, completely on Utah Code Annotated 70A–9–313. This provision deals with fixtures, and who wins priority disputes regarding fixtures.

¶ 16 Schriever does not contest Deere's characterization of the manufactured home as a fixture; indeed, Schriever argues in favor of this characterization in her brief. Accordingly, we accept Deere's waiver of its right to claim priority based on statutes other than those governing fixtures. *See* 83 C.J.S. *Stipulations* § 28 (2000) (noting that a party may waive the benefit of a statute enacted for protection of the party, provided the waiver does not infringe public policy or morals (citing cases)). Thus, for purposes of this appeal, we will consider the manufactured home a fixture on the Tremonton property, and reject as waived the district court's alternative reasoning premised on the home not becoming a fixture.

¶ 17 In reviewing the remaining alternative—that Deere has priority in the excess proceeds of the trustee's sale of the Tremonton property despite the manufactured home becoming a fixture—we address three main questions:

1. Did Deere's filing of a UCC-1 financing statement with the Division of Corporations perfect (i.e., give constructive notice of) its security interest in the manufactured home against a subsequent judgment lienor on the real estate on which the home was a fixture?

2. Given that the trustee sold not only the manufactured home, but all of the Tremonton property, to what extent did Deere obtain a security interest in the rest of the Tremonton property (e.g., land) when the manufactured home became a fixture on the property?

3. Does Article 9 of the Uniform Commercial Code permit the holder of a perfected security interest in a fixture to claim a perfected security interest in the proceeds of a sale of the fixture and underlying land?

We address each question in turn.

### A. Priority in the Manufactured Home

¶ 18 A fixture straddles the line between personal and real property. 35 Am. Jur.2d *Fixtures* § 1 (1967). Originally a good or chattel, a fixture has become so related to real property that it has become part of the realty. *See* Utah Code Ann. § 70A–9–313(1)(a) (1997) (repealed 2001) (defining fixtures); *Fixtures, supra,* § 1. Since a fixture is part of the real property, encumbrances on the real property encompass its fixtures. *See Fixtures, supra,* § 2. Moreover, absent an agreement to the contrary, a sale of real property generally includes its fixtures. *See id.* Yet a fixture also retains enough of a separate identity that the law may continue to recognize some of its chattel character. For example, the U.C.C. prescribes conditions under which perfected security interests in goods that have become fixtures have priority over conflicting real estate interests. *See* Utah Code Ann. § 70A–9–313 (1997) (repealed 2001) (implementing U.C.C. section 9–313's conflict resolution provisions concerning fixtures); U.C.C. § 9–313 cmt. 1 (West 1999).

¶ 19 Under the law governing fixtures, then, when the manufactured home became affixed to the Tremonton property, the home became part of the Tremonton property. As

a result, a conflict arose between Deere's security interest in the home and Schriever's judgment lien on the Tremonton property. Despite the home's status as a fixture, the district court found that Deere satisfied the U.C.C.'s conditions for obtaining priority against a judgment lienor by filing its UCC–1 financing statement with the Division of Corporations. Since the court relied on its ruling that Deere had priority in the home to conclude that Deere had priority in the excess trust proceeds, Schriever first attacks this initial ruling.

¶ 20 To refute Deere's claim to priority in the home, Schriever does not challenge the district court's conclusion that, by filing a UCC–1 financing statement with the Division of Corporations, Deere had a perfected security interest in the manufactured home before it became a fixture. Schriever contends, however, that the court erred in concluding that the mere filing of a UCC–1 sufficed to perfect Deere's security interest against her judgment lien after Pinnacle affixed the home to the Tremonton property.

¶ 21 To this end, Schriever cites *Webb v. Interstate Land Corp.*, 920 P.2d 1187 (Utah 1996), in which we held that under section 70A–9–313, the filing of a UCC–1 financing statement with the Division of Corporations was ineffective to perfect a security interest in an electric sign against a purchaser of real estate on which the sign had become a fixture. *Id.* at 1191. To maintain priority against a purchaser of the real estate, we noted that section 70A–9–313 instead required a "fixture filing," a procedure that calls for other information (e.g., legal description of the real estate) and a different filing location (in the real estate records) than a typical UCC–1 filing. *Id.* at 1190–92. In discussing the rationale behind this rule, we explained that a filing in the real estate records was necessary to provide a real estate purchaser constructive notice of an encumbrance. *Id.* at 1192.

¶ 22 However, under the U.C.C., a real estate interest arising from a purchase materially differs from an interest arising from a judgment lien. In particular, the U.C.C. does not require that a judgment lienor receive constructive notice via a fixture filing for a fixture financer to retain priority. Instead,

> [a] perfected security interest in fixtures has priority over the conflicting interest of an encumbrancer ... of the real estate where ... the conflicting interest is a lien on the real estate obtained ... after the security interest was perfected by *any method* permitted by [U.C.C.] Article [9].

Utah Code Ann. § 70A–9–313(4)(d) (1997) (repealed 2001) (emphasis added). In elaborating on the permissible methods of perfection against judgment lienors, the Official Code Comments state that a

> fixture security interest if perfected first should prevail [against a judgment lienor] even though not filed or recorded in real estate records, because generally a judgment creditor is not a reliance creditor who would have searched records. Thus, even a prior filing in the chattel records protects the priority of a fixture security interest against a subsequent judgment lien.

U.C.C. § 9–313 cmt. 4(c) (West 1999). Deere filed "in the chattel records" when it filed a UCC–1 with the Division of Corporations. This filing came before Schriever's judgment lien attached. Accordingly, we agree with the district court that Deere's security interest in the home had priority over Schriever's interest in the home arising from her judgment lien on the Tremonton property.

### B. Priority in the Real Estate

¶ 23 This ruling does not inevitably lead to the conclusion that Deere has priority in the excess proceeds of the trustee's sale. Since the sale included all of the Tremonton realty (land, home, etc.), the resulting proceeds were attributable not only to the manufactured home, but to the land and anything else forming a part of the realty. Neither the district court nor Deere has explained how Deere's priority interest in the manufactured home permits Deere to claim indiscriminately first priority in the excess proceeds. The court's conclusion that Deere has priority in the proceeds, coming as it does in the absence of an agreement apportioning the proceeds between the home and the rest of the realty, implicitly assumes Deere ob-

tained a priority interest in the realty as a whole when the home became a fixture.

¶ 24 Section 70A–9–313 does not, however, purport to give a person with a perfected security interest in a fixture an interest in the rest of the realty. In *FGB Realty Advisors v. Bennett*, 44 Conn.Supp. 156, 672 A.2d 545, 547–49 (1995), for example, the court held that under U.C.C. section 9–313, a perfected security interest in an in-ground swimming pool had priority over a mortgage on the real estate only as to this one fixture, not as to the realty as a whole. *See also Capitol Fed. Sav. & Loan Assoc. v. Hoger*, 19 Kan.App.2d 1052, 880 P.2d 281, 283–84 (1994) (holding that under Kansas U.C.C. section 9–313, although fixture filing gave chattel financer priority interest in furnace and air conditioner that became fixtures, financer's interest did not extend beyond fixtures to rest of realty). Thus, Deere had an interest with respect to one fixture, the manufactured home. Only the trust beneficiary and Schriever, through her judgment lien, had an interest in the realty as a whole.

### C. Priority in the Proceeds

■ ¶ 25 We next turn to the question of whether, despite our conclusion that Deere had a security interest only in the home, Deere could nonetheless claim priority over Schriever in the excess proceeds of the entire trust property. In concluding that Deere had priority over Schriever in the proceeds, the district court relied on section 70A–9–306. However, this section does not apply to a disposition (e.g., sale) of the Tremonton property and affixed manufactured home due to their status as real property. *See* Utah Code Ann. § 70A–9–104(j) (1997) (repealed 2001) (excluding real estate transactions from Chapter 9, except as provided for fixtures in section 70A–9–313). In contrast to the approach of the district court, other courts have focused on section 70A–9–313 when considering whether an interest in a fixture continues in the proceeds. *See, e.g., Maplewood Bank v. Sears*, 265 N.J.Super. 25, 625 A.2d 537, 539–40 (App.Div.1993) (relying on section 70A–9–313, not section 70A–9–306, in determining whether fixture financer could claim

priority interest in proceeds of sale of real estate that included fixtures).

¶ 26 Section 70A–9–313 provides one express remedy for cases where a fixture financer has priority over all real estate interests in the fixture: removal of the fixture. *See* Utah Code Ann. § 70A–9–313(8) (1997) (repealed 2001). The U.C.C. does not address "whether [a] secured party may do something else in lieu of removal, such as . . . make a claim against the proceeds of a real estate foreclosure sale." William D. Hawkland et al., *Uniform Commercial Code Series* § 9–313:7 (2000).

¶ 27 Courts appear unanimous in interpreting this omission as preventing a fixture financer from sharing in the proceeds of a sale of real estate. *See Maplewood*, 625 A.2d at 539–40 (holding that under U.C.C. section 9–313, a fixture financer with priority interest in kitchen fixtures, having foregone right of removal, could not claim priority over mortgage lender in proceeds of sale of real estate); *Hoger*, 880 P.2d at 288–89; *see also FGB Realty Advisors*, 672 A.2d at 548 (noting that, upon default, removal provides the only remedy to fixture financer despite impracticality of removing in-ground swimming pool (dicta)); *cf.* Hawkland § 9–313:7 (arguing that, given difficulties in estimating fixture's contribution to real estate sale proceeds, fixture financer with right to remove fixture should not have right to await foreclosure sale and claim proceeds, unless removal would breach peace).

¶ 28 Unlike the situation in cases like *Maplewood*, Deere may not have had the option of removing the home before the trustee's sale. Specifically, Deere's failure to comply with section 70A–9–313's fixture filing requirements likely rendered its interest in the home subordinate to that of the Sodberry trust beneficiary. *See* Utah Code Ann. § 70A–9–313(4), (5) (1997) (repealed 2001) (requiring fixture filing to retain priority against most types of real estate interests, unless certain conditions are met (e.g., holder of real estate interest disclaims interest in fixtures)); *cf.* 35 Am.Jur.2d *Fixtures* § 51 (1967) (noting that mortgage covers subsequently-annexed fixtures even though the mortgage instrument did not refer to fixtures

(citing cases)). If Deere's interest was inferior to that of the trust beneficiary, Deere could not have claimed a statutory right to remove the home. *See* Utah Code Ann. § 70A–9–313(8) (1997) (repealed 2001) (conditioning right of removal on fixture financer having interest superior to all other real estate interests). But we need not decide whether the existence of the trust precluded removal, for Deere's right to claim an interest in the proceeds does not turn on whether Deere could remove the home, as discussed below.

¶ 29 Construing section 70A–9–313, we see no evidence that the legislature intended that, when removal is unavailable, a fixture financer have an interest in the proceeds of the sale of the real estate. First, section 70A–9–313 makes no mention of any remedy other than removal. Moreover, the drafters of section 9–313 intended to provide only a limited set of exceptions to the general rule that, in a priority dispute, real estate interests trump interests in chattel that have become fixtures. *See* U.C.C. § 9–313 cmt. 1 (stating that "chattel interests [are] subordinate to real estate interests except as protected by the priorities" in section 9–313). The absence of express authorization, together with the default rule favoring real estate interests, makes it unlikely the legislature intended to grant a fixture financer a priority interest in proceeds of a sale of real estate. *Cf. Olson v. Salt Lake City Sch. Dist.*, 724 P.2d 960, 966 (Utah 1986) (relying on canon of construction under which the enumeration of specific items in a statute indicates the legislature's intent to exclude other items (citing 2A *Sutherland's Statutory Construction* § 47.23 (4th ed.1984))). Second, when the legislature intended to grant an interest in proceeds in other contexts, it did so expressly. *See* Utah Code Ann. § 70A–9–306 (1997) (repealed 2001) (permitting security interest to continue in proceeds); *cf. Maplewood Bank*, 625 A.2d at 540 (declining to construe U.C.C. section 9–313 as permitting fixture financer's interest to continue in proceeds because this "would be legislating" and

noting that, in the one state (Louisiana) that allows this remedy, the legislature expressly authorized it by adding nonuniform language to U.C.C. § 9–313(8)).

¶ 30 Accordingly, we conclude the district court erred in granting Deere a priority interest in the proceeds of the trust sale.[3] We reverse the district court's grant of summary judgment in favor of Deere. On remand, the district court should exclude Deere from those eligible to claim an interest in the proceeds. We offer no opinion as to whether Deere's security interest in the home remained effective after the trustee's sale, as this issue is not before the court.

## CONCLUSION

¶ 31 Although Deere had priority in the manufactured home against Schriever's judgment lien, the version of the U.C.C. governing this case did not provide Deere the right to claim priority in proceeds derived from the sale of the realty to which the home was affixed. Accordingly, we reverse the order of the district court awarding Deere priority in the excess proceeds and remand for disposition of the excess proceeds in a manner consistent with this opinion.

¶ 32 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice WILKINS concur in Justice DURRANT'S opinion.

---

**3.** We recognize that the recently revised U.C.C. may dictate a different result in future cases. *See* Utah Code Ann. § 70A–9a–604(2) (Supp.2001); U.C.C. § 9–604 cmt. 3 (stating that the new section 9–604 "serves to overrule cases holding that a secured party's only remedy after default is the removal of the fixtures").