2002 UT 59

**PROGRESSIVE CASUALTY INS. CO., Plaintiff and Appellee,**

v.

**Kevin J. DALGLEISH, Rhett W. Davis, and Danielle Price, Defendants and Appellants.**

No. 20000715.

Supreme Court of Utah.

June 25, 2002.

Theodore E. Kanell, Robert C. Olsen, Salt Lake City, for plaintiff.

David N. Mortensen, Jeffery C. Peatross, Salt Lake City, for defendants.

DURRANT, Associate Chief Justice:

¶ 1 This appeal concerns a single-car accident in which the driver and a passenger were injured. Both individuals committed fraud in their initial claim on an automobile insurance policy issued by Progressive Casualty Insurance Company. We consider two issues. First, whether the policy's reference to Utah's "minimum statutory limits" was adequate to reduce Progressive's liability to those limits based on the fraud of the insured driver. Second, whether the passenger's fraud excused Progressive of all obligation to make payments under the policy.

¶ 2 The district court held that the incorporation of the "minimum statutory limits" was insufficiently specific and therefore invalid. We conclude that because the policy included a detailed definition of the "minimum statutory limits," those limits were properly incorporated. The district court further held that because the policy allowed Progressive to deny coverage to an "insured person," as

defined in the policy, who commits fraud, Progressive was not obligated to pay on the passenger's claim. We conclude that the passenger claimed not as an insured person, but as a third party. His claim was against the driver, not against Progressive. Accordingly, Progressive was not entitled to deny coverage for the accident to its insured, the driver, based on the fraud of the passenger.

## BACKGROUND

██ ¶ 3 In reviewing a grant of summary judgment, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Higgins v. Salt Lake County,* 855 P.2d 231, 233 (Utah 1993). We state the facts accordingly.

## I. THE ACCIDENT, THE INITIAL CLAIM, AND THE SECOND CLAIM

¶ 4 On August 16, 1997, Rhett W. Davis and Danielle Price were involved in a single-car rollover on Upper Corner Canyon Road located in Salt Lake County. The 1997 Land Rover they were driving was covered by an insurance policy issued by Progressive to Davis's step-father, Kevin J. Dalgleish. Davis had Dalgleish's permission to use the vehicle.[1]

¶ 5 Davis and Price initially claimed that Davis was driving the Land Rover at the time of the accident. On this basis, Price sought compensation for her injuries and subsequently settled with Progressive for $11,000. Over a year later, however, Price and Davis admitted that Price was actually driving when the accident occurred, and Price returned the $11,000 to Progressive. Davis then sought compensation from Progressive for the injuries he had sustained in

the accident as a result of Price's negligence in driving.

## II. PROGRESSIVE'S DECLARATORY JUDGMENT ACTION

¶ 6 Progressive filed a complaint on July 30, 1999, seeking a declaratory judgment that the actions of Price and Davis amounted to insurance fraud under Utah law that voided insurance coverage entirely for all claims arising from the accident. Davis responded by moving for summary judgment, arguing that the insurance policy mandated liability coverage to injured third parties, even in the event of fraud by the insured, at least up to the "minimum statutory limits."[2] Davis further argued that the reference to "minimum statutory limits" was improperly incorporated into the policy because the insurance contract did not define "minimum statutory limits." Accordingly, Davis insisted that Progressive was required to pay up to the full liability coverage amount allowed under the policy. Progressive then filed its own summary judgment motion, arguing that either the insurance policy was completely void due to Davis's and Price's fraud, or, in the alternative, that it could deny Davis's claim due to his fraud.

¶ 7 In a memorandum opinion issued on March 3, 2000, the district court concluded that the insurance policy did not properly incorporate the "minimum statutory limits." It therefore precluded Progressive from reducing its liability to those statutory limits. The district court later granted summary judgment in Progressive's favor on July 19, 2000, however. It reasoned that because the misrepresentations by Davis and Price constituted insurance fraud, Davis was precluded from making a claim against Price, and Progressive was excused of any obligation to make payments under the policy to Davis.[3]

---

1. Both parties acknowledged this fact at oral argument before this Court. We therefore presume it to be true.

2. The policy's stated liability limit is $50,000, whereas the "minimum statutory limit" is $25,000.

3. In reaching its decision, the district court cited the following provisions of the insurance policy:

This policy was issued in reliance upon the information provided on your insurance application. We may void coverage under this policy if you or an insured person have knowingly concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, at the time application was made or at any time during the policy period.
We may void this policy or deny coverage for any accident or loss if you or an insured person have knowingly concealed or misrepresen-

## III. ISSUES RAISED ON APPEAL

¶ 8 Davis appeals the district court's July 19, 2000, decision precluding him from making a claim against Price and excusing Progressive of any obligation to make payments under the policy; Progressive cross-appeals, challenging the district court's March 3, 2000, memorandum decision, which precluded it from limiting its liability to the "minimum statutory limits." We have jurisdiction pursuant to section 78–2–2(3)(j) of the Utah Code. Utah Code Ann. § 78–2–2(3)(j) (1996).

¶ 9 On appeal, Davis contends that Progressive cannot avoid liability entirely because Utah's statutory no-fault insurance scheme and Utah case law mandate liability coverage. He also argues that the insurance policy mandates liability coverage despite fraud by the insured and that the district court ignored this language in its ruling. Moreover, Davis insists that he must be treated as a third party, not an insured person, because his claim is against Price, not directly against Progressive. Finally, he insists that the policy's step-down provision (i.e., the provision that reduces coverage to the "minimum statutory limits" where fraud is committed by the insured) improperly incorporated coverage limits by reference and that the district court acted appropriately in holding the incorporation invalid.

¶ 10 Progressive counters that the district court found that both Price and Davis knowingly engaged in insurance fraud. Relying on this finding, it asserts that Davis qualifies as an insured person under the policy, and that Utah's statutory no-fault insurance scheme does not require insurance coverage for insured persons who commit fraud. Progressive further relies on a provision in the policy providing that "[w]e may void this policy or deny coverage for an accident or loss if you or an insured person have knowingly concealed or misrepresented any material fact or circumstance, or engaged in

fraudulent conduct, in connection with the presentation or settlement of a claim." Alternatively, Progressive argues that the step-down provision was properly incorporated into the insurance policy because the policy sufficiently defines the "minimum statutory limits."

## ANALYSIS

### I. STANDARD OF REVIEW

¶ 11 In considering an appeal from a district court's grant of summary judgment, we review the lower court's legal conclusions for correctness. *Tustian v. Schriever,* 2001 UT 84, ¶ 13, 34 P.3d 755. Summary judgment is proper when the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c).

### II. PRICE QUALIFIED AS AN INSURED PERSON UNDER THE TERMS OF THE INSURANCE POLICY

¶ 12 The insurance policy states that an insured person includes "any person with respect to an accident arising out of that person's use of a covered vehicle with the express or implied permission of [the policy holder] or a relative." (Bold-faced type omitted). On appeal, Davis asserts that Price had permission to drive the Land Rover; Progressive does not challenge this assertion. We therefore presume that fact to be true and find that under the plain language of the policy, Price qualified as an insured person.

### III. PRICE'S FRAUD TOWARD PROGRESSIVE REDUCED HER LIABILITY COVERAGE UNDER THE INSURANCE POLICY TO THE MINIMUM STATUTORY LIMITS

■ ¶ 13 As an insured person under the policy, Price indisputably made fraudulent

---

ted any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.
We may void this policy for fraud or misrepresentation even after the occurrence of an accident or loss. This means that we will not be liable for any claims or damages which would otherwise be covered. However, if we

void this policy, this shall not affect coverage under Part 1 Liability to Others up to the minimum statutory limits if the accident occurs before we notify the named insured that the policy is void. If we void this policy, you must reimburse us if we make a payment. (Bold-faced type omitted).

misrepresentations to Progressive. Indeed, the district court found, and the parties in this appeal do not contest, that in submitting her claim to Progressive, Price falsely stated that Davis was driving at the time of the accident. Based on this fraud, Progressive contends that the insurance policy allows it to reduce liability limits to the "minimum statutory limits" and that the district court erred in concluding otherwise. Specifically, it argues that the step-down provision allowing it to reduce liability coverage to the "minimum statutory limits" in the event of fraud by an insured person was properly incorporated into the policy and should be enforced.[4] We agree.

¶ 14 Section 31A–21–106(1)(a) of the Utah Code states that

an insurance policy may not contain any agreement or incorporate any provision not fully set forth in the policy or in an application or other document attached to and made a part of the policy at the time of its delivery, unless the policy, application, or agreement accurately reflects the terms of the incorporated agreement, provision, or attached document.

Utah Code Ann. § 31A–21–106(1)(a) (2001). In addition, we have held that a mere reference to statutory limits, without fully setting forth those limits in the contract or an attached document, "violates the plain language and purpose of section 31A–21–106." *Cullum v. Farmers Ins. Exch.*, 857 P.2d 922, 925 (Utah 1993). Relying on this legal authority, the district court held that Progressive improperly incorporated coverage limits by reference. In so doing, however, the district court apparently overlooked a section in the insurance policy, a copy of which was submitted to the court in Progressive's summary judgment motion, that explicitly defines

"minimum statutory limits."[5] Indeed, the plain language of that policy defines the phrase "minimum statutory limits" in elaborate detail:

[T]he minimum policy limits for motor vehicle liability coverage required by the law of the State of Utah ... are as follows:

a. $25,000 because of liability for bodily injury to one ... person arising out of the use of a motor vehicle in any one ... accident.

b. subject to the limit for one ... person in "a" above, $50,000 because of liability for bodily injury to two ... or more persons arising out of the use of a motor vehicle in any one ... accident; and

c. $15,000 because of liability for property damage arising out of the use of a motor vehicle in any one ... accident; or

d. $65,000 because of liability for bodily injury or property damage arising out of the use of a motor vehicle in any one ... accident.

We thus conclude that the policy's step-down provision was properly incorporated into the insurance policy at issue and that Progressive's potential liability is therefore reduced to the "minimum statutory limits."

### IV. DAVIS IS A THIRD-PARTY CLAIMANT

¶ 15 Progressive next asserts that Davis also qualifies as an insured person under the terms of the insurance policy because he made "use of" the Land Rover. It argues that it may therefore void insurance coverage entirely because he made the same fraudulent misrepresentations as Price. In

---

4. The step-down provision declares as follows:

We may void this policy for fraud or misrepresentation even after the occurrence of an accident or loss. This means that we will not be liable for any claims or damages which would otherwise be covered. However, if we void this policy, this shall not affect coverage under Part 1 Liability to Others up to the minimum statutory limits if the accident occurs before we notify the named insured that the policy is void. If we void this policy, you must reimburse us if we make a payment.

(Bold-faced type omitted).

5. We note that there is no indication in the record that the parties brought this particular provision to the district court's attention. However, the issue regarding incorporation was raised below, and the insurance policy was submitted to the district court. It is therefore appropriate on appeal to examine the entire insurance policy in determining whether the "minimum statutory limits" were properly incorporated.

other words, Progressive argues that as a user of the insured vehicle, Davis was entitled to coverage for any liability arising out of his use of that vehicle and that the insurance policy allows it to void coverage when fraud is committed by an insured person. To support this argument, it relies on the following provisions in the policy:

> We may void coverage under this policy if you or an insured person have knowingly concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, at the time application was made or at any time during the policy period.

> We may void this policy or deny coverage for any accident or loss if you or an insured person have knowingly concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with presentation or settlement of a claim.

¶ 16 Davis claims that while he is an insured person for purposes of a liability claim brought against him, he is not an insured person for purposes of his claim against the driver (Price). Rather, he contends that he is merely a third-party claimant. To buttress this position, he relies on *Pixton v. State Farm Mutual Automobile Insurance Co.*, 809 P.2d 746 (Utah Ct.App.1991). In *Pixton*, although the contending parties were both separately insured by State Farm, the plaintiff sued State Farm as a third party to recover under the other individual's insurance policy. *Id.* at 747. The court of appeals held that the plaintiff's own contractual relationship with State Farm was unrelated to his third-party claim against the insurance company. *Id.* at 749. Davis argues his circumstance is analogous to that of the plaintiff in *Pixton*. We agree.

¶ 17 Certainly, a passenger like Davis may qualify as an insured person under the language in the insurance policy defining an insured person as one making "use of" a covered vehicle with permission. Any liability coverage to which Davis may be entitled, however, is unrelated to Price's coverage under that same policy. Similar to the plaintiff in *Pixton*, Davis's contractual relationship with Progressive is distinct from that of

Price. Further, Davis is not making a direct claim on Progressive. Rather, he is claiming against Price, who may then turn to Progressive for indemnification. Consequently, from Progressive's standpoint, Davis's claim is one of a third-party claimant.

## V. THE EFFECT OF DAVIS'S FRAUD

¶ 18 Under the plain language of the insurance policy, the insured's liability coverage for injuries sustained by third parties is expressly preserved up to the "minimum statutory limits" even where Progressive opts to void the policy due to fraud by an insured person. Specifically, the insurance policy declares that avoidance of coverage due to an insured person's fraud "shall not affect coverage under Part 1 Liability to Others up to the minimum statutory limits if the accident occurs before we notify the named insured that the policy is void." (Bold-faced type omitted.) Thus, on its face, the policy appears to require some liability coverage for Price, notwithstanding her fraud, because the underlying accident occurred before Progressive attempted to void the policy.

¶ 19 In the instant action, however, both the insured person (Price) and the third-party claimant (Davis) made fraudulent misrepresentations to Progressive. Having concluded that Price's right to indemnification was reduced by her own fraud, we must therefore determine whether her right to coverage under the insurance policy is further reduced by Davis's fraud as a third-party claimant. We conclude that it is not for three reasons.

¶ 20 First, Davis's fraudulent statements to Progressive are unrelated to his claim against Price and do not entitle Progressive to void Price's coverage. As we explained in *Beck v. Farmers Insurance Exchange*, a third-party action is a dispute between the insured and the person alleging injury, and the insurance company's role is limited to defense and indemnification of the insured. 701 P.2d 795, 798 n. 2 (Utah 1985) (noting that a third-party action is "one where the insurer contracts to defend the insured against claims made by third parties against the insured and to pay any resulting liability,

up to the specified dollar limit"). Any fraudulent act committed by an injured third party against an insurance company therefore has no relevance to the third-party's action against the insured.

¶ 21 Second, although it is repugnant for an individual to benefit from his or her fraudulent activity, *see, e.g., Wall v. Salt Lake City*, 50 Utah 593, 607, 168 P. 766 (1917) (declaring that a "municipal corporation can no more profit by fraud . . . than an individual"), there is no indication here that Davis is benefitting from his fraud. To the contrary, the funds originally obtained by Price from Progressive were returned, and Davis is now merely seeking the recovery for his injuries to which he is legitimately entitled.

¶ 22 Finally, the policy itself does not distinguish between an innocent third party and a third party who has committed fraud. It merely provides Progressive with the option of reducing the coverage available to the "minimum statutory limits" if an insured person commits fraud.

¶ 23 Despite our conclusion that Davis may recover against Price and that Price is indemnified up to the "minimum statutory limits" by Progressive, we note that Davis and Price are not in the same position that they would have been absent their fraud. Both individuals have exposed themselves to potential criminal charges. In addition, the coverage provided by Progressive to Price has been reduced to the "minimum statutory limits" from the coverage that would have been available absent the fraud, thereby reducing Price's capacity to pay any damages awarded to Davis.

### CONCLUSION

¶ 24 Because the insurance policy included a specific definition of the "minimum statutory limits," we conclude that Progressive properly incorporated those limits into the policy and that it is entitled to reduce coverage to the minimum statutory amount due to Price's fraudulent misrepresentations. Moreover, because Davis's fraud against Progressive is irrelevant to his third-party claim against Price, we conclude that Progressive may be obligated to indemnify Price for

Davis's injuries resulting from the accident up to the "minimum statutory limits." We therefore reverse both the district court's memorandum order and its summary judgment decision, and remand for further proceedings consistent with this opinion.

¶ 25 Chief Justice DURHAM, Justice HOWE, Justice RUSSON, and Justice WILKINS concur in Associate Chief Justice DURRANT's opinion.