[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11449
_____

D.C. Docket No. 3:11-cv-00390-MMH-JRK

JASON LANKHORST,
RACHELLE LANKHORST,
individually and on behalf of all others similarly situated,

Plaintiffs-Counter Defendants-Appellants,

versus

INDEPENDENT SAVINGS PLAN COMPANY,
a Florida corporation, d.b.a. ISPC,

Defendant-Counter Claimant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 29, 2015)

Before WILSON and ANDERSON, Circuit Judges, and VOORHEES,* District
Judge.

_____

*      Honorable Richard L. Voorhees, United States District Judge for the Western District of
North Carolina, sitting by designation.

ANDERSON, Circuit Judge:

Plaintiffs Jason and Rachelle Lankhorst ("Lankhorst") appeal the district court's grant of summary judgment in favor of Defendant Independent Savings Plan Company ("ISPC"). After careful review of the record, and with the benefit of oral argument, we affirm.

## I.  BACKGROUND

Lankhorst moved to Orange Park, Florida at the behest of the United States Navy in 2010. Immediately upon moving into their newly-purchased home, Plaintiffs began receiving phone calls from Water Equipment Technologies of Florida, Inc. ("WET"), soliciting the opportunity to pitch the sale of a residential water treatment system. The Plaintiffs eventually acquiesced and a WET salesman visited the home. Pressured by the sales pitch, the Plaintiffs agreed to purchase the treatment system. On the Purchase Agreement, the Plaintiffs indicated that they intended "to seek financing for [the] transaction." The WET salesman told the Plaintiffs that they would qualify for a very low interest rate.

WET installed the treatment system within twenty-four hours of the sale, prior to the finalization of any financing agreement. Following the three-day expiration period of the Purchase Agreement's cancellation right, ISPC delivered the Credit Agreement. At that time, the Plaintiffs discovered the interest rate was actually 17.99%. Plaintiffs effectively had no choice other than to accept the terms

of the Credit Agreement.

Plaintiffs alleged that ISPC violated the Truth in Lending Act ("TILA") by failing to disclose examples of minimum payments and the maximum repayment period for this "extension of credit which is secured by the consumer's principal dwelling," 15 U.S.C. § 1637a(a)(9).  Plaintiffs also alleged that ISPC failed, in violation of § 1635(a), to properly delay performance to allow the Plaintiffs to rescind the contract, as regulations prohibit services from being performed and material from being delivered until after the rescission period.  The district court granted summary judgment in favor of ISPC concluding that the Credit Agreement did not convey a security interest in the Plaintiffs' residence, and thus that there was not a violation of either § 1635(a) or § 1637a(a)(9), both of which depend on there having been a security interest in the residence.  Furthermore, the district court concluded that the treatment system was not a fixture, and even if it was, TILA expressly excludes fixtures from the definition of "security interest."

## II.  DISCUSSION

This Court reviews a grant of summary judgment de novo.  Royal Ins. Co. of Am. v. Whitaker Contracting Corp., 242 F.3d 1035, 1040 (11th Cir. 2001).  Florida courts consider "whether property [has] annexed to realty [as] a fixture [to be] a question of fact, or a mixed question of law and fact."  Cmty. Bank of Homestead v. Barnett Bank of the Keys, 518 So. 2d 928, 930 (Fla. Dist. Ct. App. 1987).

Lankhorst argues both that the water treatment system is a fixture and that the Credit Agreement created an interest in the residence. ISPC counters that it is not a fixture, and alternatively, even if it is a fixture, it is not a security interest in the residence and thus neither § 1635(a) nor § 1637a(a)(9) applies.

We are skeptical of the district court's conclusion that the treatment system is not a fixture; but, we need not reach that issue. For the sake of this opinion, we assume arguendo that the water treatment system does constitute a fixture under Florida law.

Even if the treatment system constitutes a fixture, Lankhorst must prove that ISPC took a security interest in the residence, as both 15 U.S.C. §§ 1635 & 1637a—those provisions upon which Plaintiffs stake their TILA case—require that the financing be secured by the "principal dwelling." Lankhorst has cited no authority to support the assertion that a security interest in a fixture constitutes a security interest in the real property on which the fixture is installed. Nor has our research uncovered any such case. Florida law is to the contrary. Fla. Stat. §679.604(3) provides that a party holding a security interest in a fixture may, after default, "remove the collateral from the real property." The security interest in a fixture does not give the party a security interest in the realty on which it is installed. In this case the water treatment equipment can be removed in a manner similar to a hot water heater.

4

Florida law dictates that the private contract between the two parties be the starting point for determining the extent of a security interest. See Dickason v. Marine Nat. Bank of Naples, N.A., 898 So. 2d 1170, 1174 (Fla. Dist. Ct. App. 2005) ("We are mindful that a financing statement should not be construed to enlarge the description of the collateral in the security agreement."). The Credit Agreement states that the buyer grants to ISPC "a purchase money security interest in any purchases" made to the account.[1] Clearly the "purchase" here is the treatment system, not the residence.[2]

Lankhorst contends that ¶ 23(j) of the Credit Agreement, dealing with a buyer's failure to pay, establishes that ISPC has taken a security interest in the residence.[3] However, the language of this section is couched in terms of a

---

[1]    The entire description of the security interest of the Credit Application and Agreement reads: "11. Security Interest -You hereby grant to ISPC a purchase money security interest in any purchases you charge to your account. You agree and acknowledge that ISPC has and shall continue to have a security interest in said purchases as long as your account is open, whether any of said purchases is a fixture or not, and regardless of the exact nature of the security interest applicable to any specific purchase. You promise to sign all financing statements and to do all other things necessary to perfect and protect our security interest when we request you to do so. Any fees paid to perfect and/or protect our security interest are excluded from finance charges. You must inform us if you move, change your mailing address, or transfer the purchases subject to our security interest from your present address."

[2]    A note to the "security interest" section of the Credit Agreement reads: "Purchases that are 'fixtures' attach to and are legally treated as part of the house or other real property, and consequently, under the law, the security interests in 'fixtures' likewise are treated and enforced similarly as liens on the house or other real property." This language might have estopped ISPC from now arguing that it takes no interest in Lankhorst's residence. However, Lankhorst did not argue estoppel, so such argument is waived.

[3]    The section titled "23. Failure to Pay" reads in relevant part as follows: "If YOU do not pay on time; fail to comply with any terms of this Agreement; have made any warranty or

judgment after default.  See ¶ 23(j)[2] ("Judgments resulting from an 'Event of Default' hereunder and/or from any consensual UCC-1/lien/security interest as described herein, constitute valid enforceable liens against YOUR homestead property and will be paid in full by YOU upon any sale, conveyance or mortgage financing of YOUR homestead property[.]").  In other words, it is not the Credit Agreement or UCC financing statement itself, but the judgment against the debtor, that gives rise to the potential lien against the home.  The Florida statute converts a judgment to a lien against real property independent of this (or any) contract.  Fla. Stat. § 55.10(1) ("A judgment, order, or decree becomes a lien on real property in any county when a certified copy of it is recorded in the official records or judgment lien record of the county, whichever is maintained at the time of recordation . . . .").  So, this contractual provision stating that a judgment

---

representation which is false or misleading; YOU die; sell or convey the real property on which Purchased equipment is installed; dispose of, assign, transfer or encumber the Purchases subject to our security interest; or if in our exclusive judgment WE deem ourselves insecure as to the prospects for repayment by YOU, then YOU will be deemed in default.  In such 'Event of Default', YOU agree as follows: . . . (b) WE can require that YOU make immediate payment of YOUR entire balance, including principal, FINANCE CHARGE, and all other charges, subject to any right YOU have by state law to correct YOUR non-payment; . . . (j) Pursuant to F.S. 222 et seq., as amended, YOU agree as follows: [1.] For either post-judgment execution and/or consensual UCC-1 lien/security interest purposes, 'Purchases' made by YOU pursuant hereto are for 'labor, services, or materials furnished to repair or improve real property'; and [2.] Judgments resulting from an 'Event of Default' hereunder and/or from any consensual UCC-1/lien/security interest as described herein, constitute valid enforceable liens against YOUR homestead property and will be paid in full by YOU upon any sale, conveyance or mortgage financing of YOUR homestead property; and [3.] YOU waive and deem inapplicable any referenced provision which may allow a homestead sale or mortgage to be completed free and clear of judgments and/or consensual UCC-1s/liens/security interests."

constitutes a lien against the homestead adds nothing that a judgment does not, by itself, provide.[4]  Moreover, the very language of ¶ 23(j)[2] indicates that the lien "will be paid in full by YOU upon any sale, conveyance or mortgage financing of YOUR homestead property."  In other words, the judgment lien contemplated by ¶ 23(j)[2] is neither a security interest nor is it the usual kind of judgment lien that can be collected by judicial enforcement; rather, it provides for collection upon voluntary sale or mortgage financing of the homestead property.[5]

At most, the "Failure to Pay" provision of the Credit Agreement might be deemed to create a security interest in the <u>proceeds</u> of a voluntary sale or refinancing of the residence.  Both the language of ¶ 23(j)[2] discussed above and the first sentence of ¶ 23 indicate that it is the proceeds of voluntary sale or mortgage refinancing to which ISPC looks for its security.  That first sentence provides: "If YOU do not pay on time; . . . [or] sell or convey the real property on which the Purchased equipment is installed; . . . then YOU will be deemed in default."  However, this does not help Lankhorst because Regulation Z excludes

---

[4]    Furthermore, any debt could be reduced to a judgment, and any debt could become a lien on real property under Fla. Stat. § 55.10(1).  So under Plaintiffs' reasoning, any debt could become an interest in a residence and subject to these TILA protections.  We do not believe that was what Congress intended.

[5]    It is true that ¶ 23(j)[1] – "'Purchases' made by YOU pursuant hereto are for 'labor, services, or materials furnished to repair or improve real property'" – is a blatant attempt to predetermine the nature of the judgment lien such that it will be deemed one that would hinder any sale or mortgage of the homestead without either the consent of ISPC or full payment to ISPC.  Whether or not Florida courts would so interpret ¶ 23(j)[1] is doubtful, and need not be addressed here.  The relevant point for our purposes is that a judgment lien is not a security interest.

proceeds from the definition of "security interest" in 15 U.S.C. §§ 1635 & 1637a. 12 C.F.R. § 1026.2(a)(1), (a)(25) ("Security interest means an interest in property that secures performance of a consumer credit obligation and that is recognized by state or Federal law.  It does not include incidental interests such as interests in proceeds, accessions, additions, fixtures, insurance proceeds (whether or not the creditor is a loss payee or beneficiary), premium rebates, or interests in after-acquired property.").

The Court recognizes that this transaction between Lankhorst, WET, and ISPC may be subject to the sort of abuse of consumers that Congress sought to prevent through TILA.  If so, rather than stretch the statutory language or the language of the written agreements entered into by the parties, the appropriate remedy is to refer the matter to the proper agency for study and to ascertain if modification of 12 C.F.R. § 1026.2(a)(25) is desirable.

### III.  CONCLUSION

ISPC did not take the requisite interest in the Plaintiffs' primary residence to trigger the TILA protections on which Lankhorst relies.  Therefore, the district court did not err in granting summary judgment to the Defendant.

AFFIRMED.