**CARMEL FINANCIAL CORPORATION, INC.,**
Appellant

v.

**Julian CASTRO in His Official Capacity as Secretary of Housing and Urban Development and Stephanie Dickson, Appellees**

NO. 14–15–00478–CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed December 29, 2016.

Jody Dewayne Jenkins, Lubbock, TX, for Appellant.

Kenneth Shaitelman, Bradford W. Irelan, Debra D. Hovnatanian, Houston, TX, for Appellees.

Panel consists of Chief Justice Frost and Justices Boyce and Wise.

## OPINION

William J. Boyce, Justice

Carmel Financial Corporation, Inc. appeals from the trial court's orders on cross-motions for summary judgment. The orders arise from claims against Shaun Donovan in his official capacity as Secretary of Housing and Urban Development ("HUD")[1] and Stephanie Dickson in connection with Carmel's judicial foreclosure and declaratory judgment action.

This dispute focuses on the reach of a Texas Uniform Commercial Code (UCC) fixture filing and subsequent efforts to foreclose on a lien arising from Carmel's financing of a water treatment system installed in a house. Carmel contends that its security interest and the accompanying lien extended to the real property. According to Carmel, it has "a super-priority lien on the Property" that became "superior to the existing mortgage on the property and was not extinguished" by a subsequent foreclosure. According to HUD and Dickson, Carmel's fixture filing did not create a lien on real property; they contend the fixture filing only entitled Carmel to repossess the water treatment system.

---

1. Dickson originally sued Shaun Donovan as Secretary of HUD. Julian Castro replaced Donovan in July 2014, and was automatically substituted for Donovan as a party to this appeal. See Tex. R. App. P. 7.2.

Because we agree with HUD and Dickson that Carmel's fixture filing did not create a lien on real property under the circumstances presented here, we affirm the trial court's summary judgment orders.

## BACKGROUND

Carmel financed the purchase and installation of a $5,990 water treatment system in April 2008, for a house in Katy, Harris County, Texas. The governing contract is a consumer credit document with a revolving charge agreement. This agreement provides as follows:

13. Security Agreement: This agreement is a Security Agreement covering the purchased products and/or services and title thereto shall not pass to you until all payments hereunder, including collection charges, and attorney's fees, if any, are fully paid. You further agree that all purchased products shall be kept and or installed on the premises described herein and shall not be removed therefrom without our written consent or our assignee's written consent and that you shall not make any material change therein without our consent.

The "product" is identified as "New Water Treatment System, Aqua Tech USA."

In the event of default, the agreement gives Carmel "the right to demand the entire amount owed on your account and be paid immediately. If we begin collection proceedings, you agree to pay all collection costs, court fees and attorney's fees in the amount permitted by law."

Carmel perfected its purchase money security interest in the water treatment system through an April 2008 fixture filing recorded in the real property records in Harris County. *See* Tex. Bus. & Com. Code Ann. § 9.502 (Vernon Supp. 2016). The fixture filing states as follows: "This Financing Statement covers the following collateral—New Whole House Water Treatment System Model: Aqua Tech USA Serial # 280023." Carmel recorded no other lien to secure payment for the water treatment system. At the time Carmel recorded its fixture filing, Bank of America held a first-mortgage lien on the house.

The homeowner subsequently defaulted on payment for the water treatment system. He also defaulted on his mortgage. Bank of America foreclosed in September 2010 and transferred its rights in the property to HUD in May 2013.

HUD notified Carmel in September 2013 that it would not pay the full amount owed to Carmel for the water treatment system; instead, HUD offered $1,000. Carmel declined the offer. HUD then removed the water treatment system from the house. Carmel refused to accept delivery when HUD attempted to return the system. HUD sold the house to Dickson in January 2014; at that time, the water treatment system no longer was attached to the house.

Carmel sued HUD in December 2013, seeking judicial foreclosure and a declaratory judgment; Carmel added Dickson as a defendant in 2014, after she bought the house from HUD. Carmel alleged that its fixture filing lien attached to the real property and so allowed Carmel to judicially foreclose on the real property to obtain payment for the water treatment system. Carmel asserted that Dickson took possession of the property subject to Carmel's lien. Carmel also maintained that HUD's removal of the water treatment system did not eliminate the lien because Carmel's lien already had attached by the time HUD removed the system.

The parties filed cross-motions for traditional summary judgment. The trial court decided all issues in favor of Dickson and

HUD, and dismissed Carmel's claim against HUD. The trial court further ordered that Carmel take nothing on its claims against Dickson, and denied Carmel's request for a declaration that Carmel is "authorized to foreclose on the subject property." Additionally, the trial court awarded Dickson attorney's fees. This appeal timely followed.

### STANDARD OF REVIEW

We review summary judgments *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When reviewing a summary judgment, we examine the record in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).

A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Cantey Hanger, LLP*, 467 S.W.3d at 481. Once the movant produces sufficient evidence conclusively establishing a right to summary judgment, the burden of proof shifts to the nonmovant to present evidence sufficient to raise a fact issue. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

We review statutory construction *de novo* as a question of law. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our objective in construing a statute is to determine and give effect to legislative intent. *See Nat'l Liab. & Fire Ins. Co. v.*

*Allen*, 15 S.W.3d 525, 527 (Tex. 2000). We look to the plain meaning of the statute's words in determining the legislature's intent. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840–41 (Tex. 2007). "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). We cannot give one provision meaning out of harmony or inconsistent with other provisions, even if it might be susceptible to such a construction standing alone. *Direct Commercial Funding, Inc. v. Beacon Hill Estates, LLC*, No. 14–12–00896–CV, 2013 WL 407029, at *2 (Tex. App.–Houston [14th Dist.] Jan. 24, 2013, no pet.). Additionally, we "must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008).

### ANALYSIS

In a single issue on appeal, Carmel argues that the trial court erred in granting summary judgment because (1) the fixture filing perfected Carmel's security interest and created a super-priority lien; (2) the fixture filing extended to the real property; (3) removing the fixture did not extinguish the lien; (4) Carmel's remedies are not limited to repossession of the fixture; and (5) homestead protection may not be asserted against a prior lien holder. Dickson and HUD argue that Carmel's fixture security interest applies only to the water treatment system itself as collateral.[2]

---

2. HUD also asserted as a summary judgment ground in the trial court that Carmel's claims fail on the merits because HUD no longer owns the real property. On appeal, HUD contends it is not a "necessary party" to Carmel's suit. HUD does not argue misjoinder on ap-

peal and does not refute Carmel's contention that HUD was a permissive party to the suit. We construe HUD's "necessary party" contention on appeal as an argument in support of HUD's additional ground for summary judgment on the merits. We do not reach this

Article 9 of the Texas Uniform Commercial Code (UCC) establishes a "comprehensive scheme for the regulation of security interests in personal property and fixtures." *See* Tex. Bus. & Com. Code Ann. § 9.101 cmt. 1 (Vernon 2011). It applies to transactions creating a "security interest in personal property or fixtures by contract." *Id.* § 9.109(a) (Vernon Supp. 2016).[3]

A "security agreement" is "an agreement that creates or provides for a security interest." *Id.* § 9.102(74) (Vernon Supp. 2016). "Security interest means an interest in personal property or fixtures which secures payment or performance of an obligation." *Id.* § 1.201(35) (Vernon Supp. 2016). "Collateral" is "the property subject to a security interest . . . ." *Id.* § 9.102(12). "Fixtures" are "goods that have become so related to particular real property that an interest in them arises under the real property law of the state in which the real property is situated." *Id.* § 9.102(41). "Goods" are "all things that are movable when a security interest attaches. The term includes . . . fixtures." *Id.* § 9.102(44).

The parties do not dispute that the water treatment system at issue here is a fixture under section 9.102(41). *See generally Logan v. Mullis*, 686 S.W.2d 605, 607 (Tex. 1985) (listing factors relevant in determining whether personalty has become a fixture).

Carmel looks to sections 9.334(d) and 9.604(b) in arguing that its fixture filing securing payment for the water treatment system created a "super-priority lien" that attached not just to the fixture itself but also to the real property to which the fixture was attached.

Section 9.334 is entitled "Priority of Security Interests in Fixtures and Crops." Section 9.334(d) provides:

[A] perfected security interest in fixtures has priority over the conflicting interest of an encumbrancer or owner of the real property if the debtor has an interest of record in or is in possession of the real property and:

(1) the security interest is a purchase-money security interest;

(2) the interest of the encumbrancer or owner arises before the goods become fixtures; and

(3) the security interest is perfected by a fixture filing before the goods become fixtures or within 20 days thereafter.

*See* Tex. Bus. & Com. Code Ann. § 9.334(d) (Vernon 2011). Carmel cites section 9.334(d)(1) for the proposition that "the fixture filing attached to the real property and obtained priority."

Section 9.604 is entitled "Procedure if Security Agreement Covers Real Property or Fixtures." Section 9.604(b) provides:

(b) Subject to Subsection (c), if a security agreement covers goods that are or become fixtures, a secured party may proceed:

(1) under this subchapter; or

(2) in accordance with the rights with respect to real property, in which case the other provisions of this subchapter do not apply.

---

contention because we resolve this appeal on other grounds.

**3.** Article 9 does not apply to the "creation or transfer of an interest in or lien on real property" except in limited situations. The exceptions are as follows: "(A) liens on real property in Sections 9.203 and 9.308; (B) fixtures in Section 9.334; (C) fixture filings in Sections 9.501, 9.502, 9.512, 9.516, and 9.519; and (D) security agreements covering personal and real property in Section 9.604." *See* Tex. Bus. & Com. Code Ann. § 9.109(c)(11)(A–D) (Vernon Supp. 2016).

(c) Subject to the other provisions of this subchapter, if a secured party holding a security interest in fixtures has priority over all owners and encumbrancers of the real property, the secured party, after default, may remove the collateral from the real property.

Tex. Bus. & Com. Code Ann. § 9.604(b) (Vernon 2011). Section 9.604(b) was added in 2001. According to the official UCC comment, "Subsection (b) ... serves to overrule cases holding that a secured party's only remedy after default is the removal of the fixtures from the real property." *See id.* § 9.604(b) cmt. 3 (citing *Maplewood Bank & Trust v. Sears, Roebuck & Co.*, 265 N.J.Super. 25, 625 A.2d 537 (N.J. Super. Ct. App. Div. 1993)).

According to Carmel, section 9.604(b)(2) means its fixture filing allows it to enforce its interest under real property law against third parties. Carmel further asserts that "[s]uch real property remedy can only be judicial foreclosure because to hold otherwise would be to assume that there is no real property remedy."

Carmel's contentions bypass a threshold issue: What was the nature of the security interest established by Carmel's security agreement with the homeowner for the purchase and installation of the water treatment system?

■■■ "The security agreement defines the collateral to enable the debtor and other interested persons to identify the property that the creditor may claim as security." *Crow–Southland Joint Venture No. 1 v. N. Fort Worth Bank*, 838 S.W.2d 720, 723–24 (Tex. App.–Dallas 1992, writ denied). "Accordingly, the security agreement must describe the collateral." *Id.*; *see also* Tex. Bus. & Com. Code Ann. § 9.203 (Vernon 2011). "The financing statement is the instrument designed to notify third parties ... that there may be an enforceable security interest in the property of the debtor." *Villa v. Alvarado State Bank*, 611 S.W.2d 483, 486–87 (Tex. Civ. App.–Waco 1981, no writ). "A proper security agreement is a requisite for attachment of the security interest ... and a proper financing statement is a requisite for perfection of the security interest; both attachment and perfection are necessary for the enforcement of the ... security interest against a third party ...." *Id.*; *see also First Valley Bank of Los Fresnos v. Martin*, 144 S.W.3d 466, 472 n.25 (Tex. 2004); *Orix Credit All., Inc. v. Omnibank, N.A.*, 858 S.W.2d 586, 590 (Tex. App.– Houston [14th Dist.] 1993, writ dism'd).

■■■ Carmel did not contract with the homeowner to create a security interest in real property in connection with the water treatment system; instead, Carmel contracted to create a security interest in the system itself. Carmel contends that its security agreement with the homeowner "merely references the [water treatment system] for contractual purposes" and does not limit Carmel's security interest "to only the [water treatment system]." This contention fails because the underlying security agreement contained no authorization to give the fixture lien holder a security interest in real property. Paragraph 13 states: "This agreement is a Security Agreement covering the purchased products and/or services and title thereto shall not pass to you until all payments hereunder, including collection charges, and attorney's fees, if any, are fully paid." The "purchased product[ ]" is the water treatment system.

Neither section 9.334(d) nor section 9.604(b)(2) operates independently to create a security interest in real property that the underlying security agreement did not authorize. These provisions address mechanisms for pursuing the security interest

that the creditor and debtor agreed to create.

Section 9.334(d) addresses the priority of fixture liens when encumbrancers of real property have conflicting liens. Moreover, section 9.334(d) references a security interest in "fixtures," which, in turn, contemplates a financing statement that sets forth the requirements for goods that are to become fixtures. *See, e.g.,* Tex. Bus. & Com. Code Ann. § 9.502(a), (b) (A financing statement for goods that are to become fixtures must provide, among other information, "a description of the real property to which the collateral is related sufficient to give constructive notice of a mortgage under the law of this state if the description were contained in a record of the mortgage of the real property.") (Vernon Supp. 2016).

Carmel also misplaces its reliance on section 9.604(b)(2). This provision addresses the right of a holder of a fixture lien to utilize appropriate remedies, if any, available under state real property law to obtain payment. *See* Tex. Bus. & Com. Code Ann. § 9.604(b) cmt. 3 (Subsection (b) "makes clear that a security interest in fixtures may be enforced either under real-property law or under any of the applicable provisions of Part 6, including sale or other disposition either before or after removal of the fixtures ....). Section 9.604(b)(2) does not operate independently to expand the collateral covered by a Texas UCC fixture lien to include the whole of the real property to which the fixture is attached, and it does not itself create a security interest in the real property. *Cf. Lankhorst v. Indep. Sav. Plan Co.,* 787 F.3d 1100, 1103 (11th Cir. 2015) ("Lankhorst has cited no authority to support the assertion that a security interest in a fixture constitutes a security interest in the real property on which the fixture is installed. Nor has our research uncovered any such case .... The security interest in a fixture does not give the party a security interest in the realty on which it is installed.") (applying Florida law).

We overrule Carmel's issue insofar as it challenges the propriety of the trial court's grant of Dickson's summary judgment motion.

Because we conclude the trial court correctly determined that Carmel's fixture filing did not create a lien on the real property in which the fixture was installed, we need not reach HUD's alternate summary judgment ground. *See Gillebaard v. Bayview Acres Ass'n, Inc.,* 263 S.W.3d 342, 352 (Tex. App.–Houston [1st Dist.] 2007, pet. denied).

We overrule Carmel's issue insofar as it challenges the trial court's grant of HUD's summary judgment motion.

#### CONCLUSION

We affirm the trial court's summary judgment orders.